## York v. Commonwealth.

(Decided October 28, 1930.)

O. M. GOFF and ROSCOE VANOVER, JR., for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The grand jury of Pike county returned an indictment against appellant, Della York, Columbus Hensley, and Estill Hensley, wherein the three were accused of murdering Roby Williamson. A separation of trials was requested and granted, and the commonwealth elected to try appellant, at which she was convicted by the jury of voluntary manslaughter and punished by confinement in the penitentiary for two years. Her motion for a new trial was overruled, and she prosecutes this appeal, and in brief of her counsel all the grounds relied on in the motion for a new trial are abandoned, except the single one that the evidence was insufficient to support the verdict, and that appellant's motion for a directed acquittal should have been granted, the disposition of which requires a brief but substantial summary of the evidence.

Appellant at the time of the killing was about thirty-eight years of age and had been a widow for two years and was the mother of eight children, while the deceased was a single man about twenty-four years of age and lived with his parents in the vicinity of the killing, which occurred in a mining town in Pike county. Columbus and Estill Hensley, appellant's codefendants in the indictment, appear to have been orphans and were friends of the York family, and the younger one (Estill), who was about fifteen years of age, was temporarily residing with that family. After the death of appellant's first husband she became very much enamoured with the deceased, and they no doubt sustained the relationship toward each other of paramour and concubine. For that reason the deceased was frequently with, and at the home of, appellant. The proof shows that on two or three occasions (the last of which was about one month before the killing) appellant was in an angry mood toward the deceased, because of his supposed attentions to another woman and which aroused her jealousy, and some of the witnesses for the commonwealth testified to threats made by her against deceased, but none of them was ever carried or attempted to be carried into execution and their relationship thereafter appears to have continued with no unhappy disturbance, except, perhaps, an occasional outburst from deceased, who appears to have been more or less tyrannical with his partner in their unholy alliance.

The homicide was actually committed by Estill Hensley, who shot the deceased between 8 and 9 o'clock p. m., on a bridge spanning Pond creek and near one end of it. Some thirty minutes or more prior thereto deceased and Columbus Hensley, who had been at appellant's residence, left it and stated that they were going after cigarettes. Prior to their departure deceased had promised appellant some empty beer bottles, which she desired as containers for home-brew and which were stated to be at the home of the parents of deceased not far away. After deceased and Columbus Hensley had been gone from appellant's home for, perhaps, twenty minutes, the appellant, Estill Hensley, and appellant's nineteen year old daughter, Hester York, started to the home of the parents of deceased with the intention and purpose of procuring the bottles that deceased had promised to bring to the front gate; but when they arrived there they saw nothing of him and started back home. Upon arriving at one end of the bridge on their homeward journey, they met deceased and Columbus Hensley walking in the opposite direction. The deceased asked her where she had been, or where she was going, and she told him of her purpose to procure the bottles, when he replied in substance, "You are a liar. You have been with some men or boys," and slapped her, knocking her down, and he stated, "You aint going no damn place."

The deceased about that time, if he had not already done so, drew his pistol, and when appellant arose to escape from his wrath she and her daughter started in a run across the bridge with deceased following them, and as he passed Estill Hensley, who was already close by, the latter remarked that appellant had told the truth and for deceased to desist in his attack upon her, which seems to have been wholly unheeded by him, and Estill grabbed for the pistol of deceased, which he was waving with his hands, and succeeded after considerable scuffling in wrenching it from him. Estill then himself started across the bridge but deceased picked up a rock and started after him. When he got close to Estill, the latter fired the fatal shot from the pistol of deceased. By that time appellant and her daughter were across, or beyond the far end of, the bridge and heard the shot, but they went directly to their home where they were later arrested.

Some contradictions are proven as to what appellant said to the officers when they came to her house to arrest

754

her, and which consisted chiefly in her stating, as they say, that she was at her home when she heard the shot instead of being on the way to her home from the scene of the shooting. However, whatever guilty effect attributable to such contradiction, which was denied by appellant, it was somewhat explained by her in a manner consistent with her innocence when she gave her understanding of the questions propounded to her by the officers with reference to her exact whereabouts at the time of the shooting. All of the eyewitnesses to the homicide are of one accord in detailing the occurrences at the scene and at the time of the homicide, and without any material contradiction they portray them as we have above outlined. Nothing was testified to, nor were there any proven circumstances, contradicting their story, save and except the threats to which we have already made allusion. No recent unpleasantness on the part of appellant was either proven or attempted to be proven, and while she entertained jealousy it was shown that the deceased was likewise so innoculated, and that he was perhaps more given to demonstrations because thereof than was appellant.

We, therefore, have only the denied threats of appellant made some weeks before the homicide, plus the relationship of the parties, and the strata of society they occupied, as circumstances from which to infer appellant's guilt. But, whatever force they might have in that direction, it is more than offset by the uncontradicted testimony of every witness testifying to the occurrences of the transaction and the manner and means whereby the homicide was committed, and the motive behind it. That testimony, if true, not only wholly fails to connect appellant with the killing, but it entirely exonerates her from any blame in connection therewith. Her purpose for being out on that occasion is disputed by no one, and it is established by the uncontradicted testimony of every witness who testified about it. The same is also true with reference to the casual or accidental meeting where the killing later occurred, and the history of the transaction following that meeting contradicts any implication of guilt and proves innocence. That testimony is somewhat buttressed when it is remembered that the trio, one of whom was appellant, on leaving her home carried with them no weapons, which is inconsistent with the purpose and intent of embarking on a mission of murder.

It is useless to incumber the opinion with a long list of endless cases to the effect that guilt may not be established from bare suspicion and surmise, and we will content ourselves with referring to the comparatively recent ones from this court, of Wilson v. Commonwealth, 208 Ky. 707, 271 S. W. 1055, and Davis and Long v. Commonwealth, 211 Ky. 771, 278 S. W. 104, wherein others of like tenor may be found. It follows, therefore, that the court erred in overruling appellant's motion for a peremptory instruction of acquittal, and if the evidence should be substantially the same on another trial, the court should sustain that motion if again made.

Wherefore, the judgment is reversed, with directions to grant the new trial and for proceedings consistent herewith.