## Begley et al. v. Commonwealth.

(Decided Oct. 20, 1933.)

NAPIER & EBLEN for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellants, Cephus Begley, Arlena Gayheart, Lawrence Combs, and Estill Begley, were jointly indicted in the Knott circuit court for the willful murder of Carson Gayheart. At their joint trial in March, 1933, the appellants Lawrence Combs and Estill Begley were convicted of the offense of manslaughter and sentenced to ten years' confinement in the penitentiary, and the appellants Arlena Gayheart and Cephus Begley were found guilty of aiding and abetting in the commission of the crime and sentenced to five years in the penitentiary.

Their motion and grounds for a new trial being overruled, they have prosecuted this appeal, urging as grounds for the reversal of the judgment that:

(1) The trial court erred in failing to sustain motion for a peremptory instruction; (2) the verdict is against the evidence; (3) appellants should have been granted a new trial on the grounds of newly discovered evidence; and, (4) the court erred in failing to give the whole law to the case.

The evidence discloses that Carson Gayheart, on December 12, 1931, the day on which he met his death, was visiting the home of Arlena Gayheart on Troublesome creek and that the appellants and other members of Arlena Gayheart's family were also there.

Arlena Gayheart was an aunt of the deceased, having married his uncle, ——— Gayheart (her second marriage); also, she was the mother-in-law of the deceased's sister, Eunice, who married Arlena's son by her first marriage, Cephus Begley, and of Lawrence Combs, who married her daughter, Ellie Begley. Also, it appears that the deceased was born and grew up the

near neighbor and intimate associate of the members of this family, being a frequent visitor at his uncle's or Arlena Gayheart's home; further, it appears that Carson, the night before he met his death, had stayed with his sister and her husband, Cephus Begley, at their home, and that they had all gone to Arlena's home the next morning.

By the appellants and other members of the family, it is testified that during this visit, shortly before noon, the deceased and Estill Begley and other members of the family were talking together and that the conversation took the turn, between Estill and the deceased, of daring each other to attempt the foolhardy adventure of swimming across the cold waters of Troublesome creek, running just back of the house, and which at that time, due to a hard rain the previous night, was a raging, swollen, swiftly flowing stream of muddy water. Further it appears, according to their testimony, that Estill and Carson accepted each other's challenge, or "back-out" dare, to then swim this stream; that Carson, in preparation for the adventure, removed his suit and put on a pair of overalls borrowed from Estill and that they went, hand in hand, to the creek, waded in and began their effort to swim it; that Carson got across, but that Estill, upon reaching midstream, became frightened and swam back, reaching the bank, because of the swiftness of the current, some distance below the point from which they had started; that Carson, after witnessing Estill's failure to swim the swollen stream, undertook to swim back across it, but in so doing, failed and was carried by the strong current some fifty yards below the point where Estill was standing across the stream near the bank to which he had returned; that after being carried by the current to within a few feet of the opposite bank, and vainly attempting to catch and there hold onto some small willows, he disappeared beneath the waters and was not seen again until his dead body body was found the following Sunday morning some seven or eight miles down the stream, lying on its bedrock in the there shallow water.

The body was carried by his uncle, Silas Gayheart, and others back to his home, and thence to the undertakers at Hazard, where an inquest was held, and the body examined by the coroner's jury and Drs. Britt

Combs, the coroner, and J. C. Coldiron, called in to assist him. The latter two testified upon the trial as expert witnesses on behalf of the commonwealth as to the character and significance of the wounds found upon the body.

It is the theory of the commonwealth that the decedent was killed by the appellants and his body thrown into the creek after his death.

In support of this theory, it offered the evidence of these experts to show that some of the wounds found on decedent's head and body were inflicted before death. Their testimony is to the effect that the swelling and blue color of the wounds on the forehead and arm indicated they were inflicted before death. Both testified to finding upon their examination that the forehead wound of Carson had been painted with mercurochrome, the color of which could still be found on it, notwithstanding the body had remained in the creek some twenty-four hours. Mercurochrome, they testified, when applied to a blue, bruised surface, as was the forehead wound, could not be washed off, as it is a dye product. Further, they testified that the other wounds found upon the body of the deceased were differently discolored, being greyish in hue and were doubtless inflicted after death, having the appearance of abrasions produced by the body coming in contact with the rock, sand, and gravel of the stream, as it was dragged and carried down the creek by its current. The expert testimony was further to the effect that the forehead wound could have been caused while the deceased was either swimming in the creek or when standing on the bank, but in either event, it was inflicted before death.

It is further their evidence, in support of the commonwealth's contention, that the deceased was dead when thrown by the appellants into the creek, that, where death is caused by drowning, the symptoms thereof are a distended chest and abdomen, and that upon moving the body water will run from the mouth, but that the body of the deceased, on its removal from the creek, was not thus abnormally swollen, nor did water run from the mouth.

While it is admitted that the deceased was visiting at the home of Arlena Gayheart upon the Saturday morning in evidence and was there with the appellants

and others of their family, there is nowhere found in the record any evidence that any quarrel or difficulty then, or at any time, occurred between the deceased and the appellants or that they, or any of them, fought with or inflicted or aided and abetted in the inflicting of any wounds upon the person of the deceased; nor is there any evidence tending to support the charge made in the indictment that the appellants, or any of them, murdered the deceased, Carson Gayheart, by striking or wounding with clubs, etc., or inflicted wounds upon his body from which he died, or that the said appellants, or any of them, entered into any criminal conspiracy to kill Carson Gayheart, or that persuant thereto one or more of them struck and wounded him with clubs and other weapons while the other defendants, not so striking and wounding him, were then present and aided and encouraged the defendants who struck and wounded him to so strike, wound, and kill the said Gayheart, other than that which the commonwealth insisted was found in the circumstances of the decedent having been, upon this Saturday morning in question, a visitor at the appellant's home, to which he had gone, his father testifies, sound of body, and of his dead body being later found in the creek some seven or eight miles below appellant's home, marked with these certain wounds, which it claims its expert testimony shows to have been inflicted before Carson's death, and which was therefore, it argues, not caused by drowning, as was claimed and testified to by the appellants.

While it may be conceded that a conviction can be supported and sustained where found upon sufficient substantial and probative circumstantial evidence, we do not think the circumstantial evidence of foul play, here before us as proof of the defendants' guilt of the crime of killing and aiding and abetting in the killing of Carson Gayheart, is of such character or probative value as is sufficient to support the jury's verdict of guilty based thereon.

We have examined with great care the evidence herein offered by the commonwealth for the purpose of determining whether or not there was any or other testimony or evidence conducing to show that the appellants were guilty of or in anywise by it shown to have been connected with the crime charged against them.

Our conclusion is that there was not, and that the trial judge should have directed the jury to have returned a verdict thereon finding the defendants not proven guilty. Under the indictment, it was necessary, to make out a case for the commonwealth authorizing a submission to the jury, that some evidence should have been introduced by it, not only tending to show that the deceased died from wounds caused by striking with clubs, rocks, or other missiles, but further reasonably tending to connect the appellants with his death either as having inflicted the wounds and injuries resulting in his death, or as aiders and abettors therein. While the testimony of the expert witnesses here introduced may be considered as tending to show that the deceased, Carson Gayheart, met with the infliction upon him of injuries and wounds from which he died, through its claim made that the nature and character of injuries found upon the dead body were such as to show their infliction before Gayheart's death, yet nowhere is there a scintilla of evidence pointing to or reasonably connecting the appellants with the inflicting, or participation in the inflicting, of such wounds and injuries upon the deceased, other than the mere circumstances of his visiting appellant's house that day. The record before us shows total failure of proof tending in any degree to establish that the accused either committed or aided and abetted in the commission of the charged crime of murdering the deceased.

It is a well-settled rule that, while it is not within the province of the trial court to take from the jury a criminal prosecution if there is any evidence tending to show that the defendant is guilty of the offense charged, yet, if the evidence introduced in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt of the offense charged, it is not only the right, but the duty, of the trial judge to instruct the jury to return a verdict of not guilty. The trial judge has the same right and authority to give a peremptory instruction in a criminal proceeding that he has in a civil action. In Blankenship v. Commonwealth, 147 Ky. 768, 145 S. W. 752, 753, this court quoted with approval the following statement of this rule and its origin as found in the case of Commonwealth v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141:

"This rule of practice is not found directly in

either the Code or Statutes, but it is firmly established as a part of the criminal jurisprudence of the state, and is uniformly applied by this court in considering appeals in criminal cases, where a reversal is asked because the verdict is flagrantly against the evidence, or is not supported by sufficient evidence, and should control the lower courts in the disposition of criminal cases.''

Vowells v. Commonwealth, 83 Ky. 193; Patterson v. Commonwealth, 86 Ky. 313, 99 Ky. 610, 5 S. W. 765, 9 Ky. Law Rep. 481.

Where there is no evidence of probative value that defendants struck deceased or were in quarrel with him or in anywise connected with his injury and death, the court should have instructed the jury to find the defendants not guilty, as they should not be convicted merely on vague suspicion. So was the rule again announced and declared in the recent case of Commonwealth v. Russell et al., 237 Ky. 101, 34 S. W. (2d) 955, 956, the court there saying:

"The well-settled rule as to when the court may instruct the jury to find the defendant not guilty is thus stated in Anderson v. Commonwealth, 196 Ky. 35, 244 S. W. 315, 317:

" 'We are further aware of the thoroughly established and long-followed rule of this court that, where there is any substantial probative evidence in the trial of a criminal case, the guilt or innocence of the defendant should be submitted to the jury by appropriate instructions although a conviction based thereon would be regarded as flagrantly against the evidence; but that rule goes no further, and it does not interfere with the right and authority of the court to direct an acquittal when there is no substantial probative evidence to establish the guilt of the defendant on trial.' ''

To like effect see Burdon v. Burdon's Adm'x, 225 Ky. 481, 9 S. W. (2d) 220; Fuson v. Commonwealth, 230 Ky. 761, 20 S. W. (2d) 742, and the numerous cases therein quoted and cited.

In view of the conclusion we have thus reached, we deem it unnecessary to here consider the further grounds of objection urged by appellants for reversal.

Therefore, for the reasons above indicated, it fol-

lows that, if upon a new trial of this case the evidence relied on for conviction of the accused is not materially different from that heard upon this trial, the court will peremptorily instruct the jury to find the accused not guilty.

Judgment is reversed, and the case remanded for a new trial consistent with this opinion.