## Privitt v. Commonwealth.

(Decided Jan. 28, 1938.)

666

LUKER & LUKER for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERD-MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the early part of the afternoon of November 15, 1936, the appellant, Irvin Privitt, shot and killed Bill Alsip with a pistol. It happened in Laurel county, Ky., and, as we gather from the record, was at some point on the farm of the deceased where he and three or four of the Phelps family and some others were engaged in procuring firewood for the Alsip and Phelps families. At the following February, 1937, term of the Laurel circuit court, appellant was indicted, charged with murder. At his later trial he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for eight years. His motion for a new trial was overruled, and from the verdict and the judgment pronounced thereon he prosecutes this appeal.

The motion contained eleven distinct grounds as alleged errors sufficiently prejudicial to authorize the setting aside of the verdict and a reversal of the judgment; but counsel for appellant in their brief filed on behalf of their client on this appeal refer to and discuss only four of them, which are: (1) Error of the court in not sustaining the motion for a peremptory instruction of acquittal made at the close of the commonwealth's testimony and at the close of all of the testimony; (2) if mistaken as to argued ground 1, then the verdict was flagrantly against the evidence; (3) incompetent evidence introduced by the commonwealth over the objections and exceptions of defendant; and (4) alleged erroneous remarks by the court to the jury concerning the importance of reaching a verdict made after it had deliberated on the case some five or six hours and had not reached an agreement. We will as briefly as possible discuss and determine the four grounds argued in brief, since the others contained in the motion for a new trial and not argued in brief will be treated as abandoned, although we have not overlooked them in our effort to discover any unfairness in the trial, and from which we concluded that none of such abandoned grounds possess merit.

1 and 2. Argued grounds 1 and 2 rest entirely upon the insufficiency of the testimony heard at the trial, and for that reason they will be considered and determined together. Defendant, at the time of the killing, was about 28 years of age, while deceased was much older. Up to about four years prior to the difficulty they had lived in the same general neighborhood in the southern part of Laurel county, but on regular election day in 1932 at their voting precincts there was some sort of difficulty between them, the details of which but meagerly appear in the record, although enough is told to show in a general way that on that occasion the deceased accosted appellant and accused him of circulating falsehoods against him. The accusation was followed by angry words, perhaps spoken by both parties, but Alsip appears to have been the exclusive instigator of that disturbance and to have inflicted on defendant more or less physical punishment by kicking and striking him. At any rate, after that difficulty, and perhaps on the same day, some witnesses testified that appellant

stated, in substance, that if Alsip ever attacked him again in such fashion he would use his gun on him, or something to that effect. Perhaps some of them said that "he would kill him with his pistol." The language employed in the threats so testified to as occurring at that time indicated only that another such attack by Alsip on defendant would be more vigorously defended by him. Similar alleged threats were proven as being made at occasional periods between that day down to a short while before the fatal difficulty wherein Alsip was killed. Defendant denied making any such threats, and some of the witnesses who testified to them were thoroughly impeached for truth and veracity. Likewise, the same impeached witnesses, or others who so testified to such threats, were connected in some degree of relationship to deceased.

At any rate, defendant shortly after the difficulty at the election referred to moved out of Laurel county over into McCreary county across Cumberland river, which separates the two counties, and he procured some sort of employment at Whitley City in the latter county. However, he would occasionally thereafter go back to his old neighborhood visiting friends, and perhaps relatives, and he states that he occasionally met the deceased and he was apparently friendly. However, the testimony shows without contradiction that deceased was a dangerous man and very overbearing when he was drinking, and that he was drinking on the fatal occasion here involved. The day was Sunday, and it is shown that Pleas Phelps, who lived in appellant's old neighborhood—and about five or six miles from his residence in McCreary county—was in the habit and had long been engaged in the practice of a sort of neighborhood amateur barber and shingled hair for his friends who applied to him for such service. On the day of the killing appellant left his home, riding a mule, to go to the home of Phelps for the purpose of having the latter shingle his hair. When he got there he learned that Phelps was absent from his home, engaged in procuring firewood for himself and others, including Alsip, and appellant went to the place, but learned on arriving there that Pleas Phelps, whom he was seeking, had left with a load of wood, for his brother, or possibly for himself, and he then went to that place, where he found

Phelps together with the latter's brother and also with others similarly engaged, one of whom was an 18 year old son of the deceased. Appellant was there informed by Phelps that he could not accommodate him by shingling his hair until after he hauled another load of wood. The parties got ready to start to haul that load (which the testimony indicates was the last one), and the son of deceased asked appellant to go along. He questioned the propriety of his going, but finally agreed to do so, and stated, in substance, that if Bill (meaning deceased) attacked him he would run out of his way.

The parties then got into the truck with which the wood was being hauled and went to the spot where it was being obtained. Deceased, and one or two others, were sitting in his automobiile parked upon the grounds. Appellant, with the others who came with him, attempted to roll out a log to be worked up into firewood and which they accomplished, appellant assisting in doing so. Just as it was accomplished deceased got out of his automobile and went to appellant and said to him: "Irvin Privitt you have heretofore told some lies on me and I don't need any of your help. You get on away from here." Upon which he put his hands on appellant and commenced pushing him, when appellant denied the accusation, and charged deceased with circulating false reports concerning him. In the meantime deceased was continuing to push appellant—either up or down the road—away from the place where the difficulty started and finally began to kick him, appellant continuing to back away from him so as to avoid the assaulting kicks. He finally took a rail from an adjoining fence and struck deceased with it across the back, when deceased grabbed it with his hands and continued to press forward towards appellant, who jumped over the fence into an adjoining field. In the meantime deceased had on his overcoat with an open knife in his right trouser pocket. Just following appellant's entry into the field, deceased likewise went over the fence, and when he landed on the ground inside the field he pulled off his overcoat, pulled up his sleeves, and again started towards appellant, who was importuning him not to advance and who had in the meantime drawn his pistol with which he was armed. During the advance after the parties got into the field, appellant told deceased

that he thought too much of his boys to do him harm, but he would be compelled to do so if he did not desist from his advance. Finally, as a means of deterring the advance of deceased, appellant fired two shots into the ground, which immediately followed the coming up of two of the sons of appellant, who were importuning appellant to not shoot, and to which he replied that he did not desire to do so and requested the sons to stop their father from the advance. It was at that point when the two shots were fired into the ground, and just following them deceased said: "Shoot, you s— of a b————. You couldn't hit me if you did shoot."

A number of witnesses testified that immediately following that remark deceased continued to advance, followed by the fatal shot from appellant's pistol, while deceased, according to the witnesses, was some twenty, or perhaps thirty, feet away. One or two of the eyewitnesses testified that when deceased made the remark last above inserted, he stopped his advance, and they thought the fatal shot was fired at that time; but the great preponderance of the proof overwhelmingly establishes the fact that deceased continued to advance upon appellant from the beginning. As an extremely fair example of the testimony for the commonwealth heard at the trial on what occurred at the place and time of the shooting, we will insert some excerpts from the testimony of Clifford Alsip, who was present and who was and is the 18 year old son of the deceased, hereinbefore referred to. In stating what occurred at the home of Pleas Phelps, just before the parties started to haul the last load of wood, he testified that he made this remark: "Who all is going back with us?" Defendant answered: "I will go with you. Bill (deceased) might jump on me but if he does I will run." He then told about defendant assisting in helping to roll the log to a place where it could be worked up, and stated that his father got out of the car in which he was sitting and came to the place and said: "Irvin Privitt, I don't need none of your help rolling this log, I told you to stay away from me, don't bother me. You told one lie on me and you ain't going to tell another." Whereupon defendant answered, "Yes, and you have told some on me, too," and then they "pushed one another around a little and they ran around the brush pile and then down to the road and

Pa kicked him a time or two and laid his hand on his shoulder and Irvin Privitt run across the road and got a fence rail and hit my Dad with it." He then told about his father grabbing the rail and taking it away from appellant, when the latter drew his pistol and commenced backing down the road and finally jumped over the fence. His testimony from that time corroborates our above synopsis of it. The stenographer's transcript of the testimony fills 186 pages, and it would serve no useful purpose to make further extracts from the testimony of any of the witnesses, since all of it is of the same tenor and substantiates that given by the son of deceased, but in many respects his testimony was even less favorable for the defense than that given by the other witnesses.

The law is well settled in criminal jurisprudence that the same practice prevails in criminal prosecutions in dealing with questions of sufficiency of evidence as is administered in civil cases. Some of the many domestic cases so declaring are: Begley v. Com., 250 Ky. 779, 63 S. W. (2d) 951, 953; Little v. Com., 245 Ky. 837, 54 S. W. (2d) 388; Com. v. Russell, 237 Ky. 101, 34 S. W. (2d) 955; Slone v. Com., 236 Ky. 299, 33 S. W. (2d) 8; York v. Com., 235 Ky. 751, 32 S. W. (2d) 331; Fuson v. Com., 230 Ky. 761, 20 S. W. (2d) 742; Day v. Com., 197 Ky. 730, 247 S. W. 951; Partin v. Com., 197 Ky. 840, 248 S. W. 489; Anderson v. Com., 196 Ky. 30, 244 S. W. 315; and numerous others found in those opinions. Some of them involved cases where the guilt of the accused on trial was attempted to be shown by circumstantial evidence alone, and in which we held that the verdict of guilty was either flagrantly against the evidence, or not sustained by it at all; while others of them did not involve a conviction on circumstantial evidence but where there was direct and express testimony showing the commission of the criminal deed by defendant, but which he attempted to excuse on the grounds of his right of self-defense. In both types of cases, we acknowledged and followed the general rule as thus stated in the Begley opinion, supra: "It is a well-settled rule that, while it is not within the province of the trial court to take from the jury a criminal prosecution if there is any evidence tending to show that the defendant is guilty of the offense charged, yet, if the evidence introduced

in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt of the offense charged, it is not only the right, but the duty, of the trial judge to instruct the jury to return a verdict of not guilty. The trial judge has the same right and authority to give a peremptory instruction in a criminal proceeding that he has in a civil action. In Blankenship v. Com., 147 Ky. 768, 145 S. W. 752, 753, this court quoted with approval the following statement of this rule and its origin as found in the case of Com. v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141: 'This rule of practice is not found directly in either the Code or Statutes, but it is firmly established as a part of the criminal jurisprudence of the state, and is uniformly applied by this court in considering appeals in criminal cases, where a reversal is asked because the verdict is flagrantly against the evidence, or is not supported by sufficient evidence, and should control the lower courts in the disposition of criminal cases.' Vowells v. Com., 83 Ky. 193; Patterson v. Com., 86 Ky. 313, 99 Ky. 610, 5 S. W. 765, 9 Ky. Law Rep. 481.'' The opinion from which the excerpt is taken substantiates it by quotations from the Anderson and other cases supra, and which embodies the general rule of practice prevailing in this court with reference to appeals in criminal prosecutions.

That homicide, or other crime involving personal assaults, is not punishable when committed in the exercise of the right of self-defense of the accused on trial—or in the defense of another—has become settled and firmly engrafted into the law from ancient times. It is as necessary for it to appear that the deed was *not* committed in exercise of such rights as it is to prove that the deed was committed at all. That being true, two facts must appear to constitute the crime—one, that defendant committed the denounced act, and the other, that in doing so he was prompted by the necessary guilty intent, i. e. that it was done with the required willful, felonious, and malicious intent on his part. If, therefore, the proof clearly and uncontradictedly shows that, although accused perpetrated the act, but that he was forced to do so in the necessary self-defense of himself, his property, or of another, and not with the requisite unlawful intent and purpose, there is then a failure to prove a punishable crime. In that case the court is not

only authorized under the practice, but it is its duty as well, to direct the acquittal of the defendant on trial—when the plea of self-defense is thoroughly and clearly established—or to set aside the verdict of conviction when it is flagrantly against the evidence, as defined by the opinions of this court. In such condition of the proof, that authority and duty is as well settled as it is when the evidence proved that the deed was not actually committed or participated in by the defendant on trial. Likewise, it is the duty of this court—as the cited cases demonstrate—to adhere to that well-established rule in reviewing appeals in criminal prosecutions. In an effort to make proper application of that rule in *this* case, we have experienced but one difficulty, i. e. whether or not appellant was entitled to an outright instruction directing his acquittal? We are thoroughly convinced that a reversal should be ordered on the ground that the verdict of conviction was flagrantly against the evidence, and we are very much inclined to the conclusion that an acquittal should have been directed. But, inasmuch as the commonwealth might strengthen its testimony against defendant on another trial, if one should be had, we have concluded not to base the reversal upon ground 1 argued in brief, but to do so upon ground 2, which is clearly sustained by the record.

3. The alleged incompetent testimony relied on in ground 3 consisted mainly, if not exclusively, upon the introduction of the threats supra alleged to have been made by appellant against deceased following the difficulty at the 1932 regular election. The grounds of this objection are that they are too remote from the time of the killing to be of probative value; but if they were of a nature going to establish guilty motive exclusively we doubt if the objections against it are sufficient to authorize their exclusion. However, the alleged threats, if made, were in the main conditional, i. e. a statement of appellant as to what he would do, *if* he was again assaulted by deceased in the manner that was done by the latter at the election referred to. In such circumstances we do not regard the alleged threats as of much, if any, incriminating value, but at the same time we are not prepared to say that they were entirely incompetent.

4. We appraise ground 4 as being entirely without merit. The argument in the case was finished and it

674

was submitted to the jury at about 4 o'clock p. m. on June 9, 1937. Its members considered the case until they were adjourned for the night (the record not showing at what particular hour), and upon convening of court the next morning, as the jury was about to retire for the consideration of the case, the court said to them: "Gentlemen of the jury, it is important that you reach an agreement, if possisble, in this case, because these cases are expensive to the commonwealth and to the defendant." It is so clearly apparent that this ground is without merit that we deem it unnecessary to elaborate upon it further than to say that the cases cited in support of it are so widely different from this case as not to require a comparison between their facts and those of this one. The statement of the court to the jury complained of by counsel carried no intimation whatever of the view entertained by the court as to the guilt or innocence of appellant. It but called the attention of the jury to what was its undeniable duty; i. e., to agree upon a verdict "if possible." No language whatever was employed in the statement by the trial judge that could possibly be construed even remotely as prejudicial to appellant's rights. However, for the reasons stated, we will terminate its discussion at this point.

For the reasons stated the judgment is reversed, with directions to set it aside, and to sustain the motion for a new trial, and for proceedings consistent with this opinion.