# Vaughn v. Commonwealth.

May 23, 1941.

J. Milton Luker for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant, indicted on a charge of shooting and killing Bige Frost, in the early part of 1940, was convicted of voluntary manslaughter, the jury fixing the penalty at confinement for a period of five years. From a judgment in accord with the verdict Vaughn appeals, his counsel contending that the court committed errors during the trial which prejudiced his substantial rights in:

1. Overruling his motion for verdict of acquittal, proposed at the close of commonwealth's, and all the testimony.

2. Refusing new trial, when it was apparent that the verdict was flagrantly against the evidence.

3. Failing to give an instruction on his right to defend his home, and in giving a faulty self-defense instruction.

4. Not granting a new trial, because of certian misconduct on the part of the jury.

Discussion of ground (4) may be obviated, since we have concluded that the judgment should be reversed on other stated grounds, though we have concluded that this ground is wholly lacking in merit. Three of the jury had filed affidavits impeaching their verdict. See Wolf v. Com., 214 Ky. 544, 283 S. W. 385; Bowman v. Com., 284 Ky. 103, 143 S. W. (2d) 1051. A brief statement of proof adduced is required for discussion of other contentions.

There were only two eyewitnesses to the homicide, appellant and Virgil Frost, an apparently intelligent boy of fifteen years of age, a nephew of both appellant and deceased, and living at Vaughn's home.

It is easily discernible from the evidence that Vaughn and Frost had known each other from boyhood, and up to the afternoon of the homicide had been on friendly terms. There was not shown to have existed any previous ill feeling between them. They were neighbors and related by marriage. On the afternoon of the day of the homicide appellant had been to the post office; returning home he came up with Frost, sitting on the roadside with a jar of moonshine whisky. Frost was intoxicated to a degree, though able to walk and talk. He insisted that Vaughn take a drink; Vaughn demurred, but after further insistence, took one drink. During this time the two were friendly and thus parted, Vaughn proceeding to his home. He ate his supper and proceeded to do some chores at some distance from the house. He returned and found Frost outside the front door, using violent language and "black-guarding his (Vaughn's) wife." Vaughn requested Frost to desist, or to "move on." Frost turned around as if to leave, but stopped and sat down in the corner of the yard. At this time he showed signs of being further under the influence of liquor. After a short while, Frost got up and moved in the direction of his home a short distance up the road, and appellant then went into the house. He admits that he got his pistol, because he wanted to protect his home, and thought Frost might return.

This very thing occurred in a short time, and when Frost came to the house he called for Vaughn to come

out. Vaughn refused, but asked Frost to come in. Frost declined and insisted that Vaughn come out, and the latter agreed, thinking, as he says, that Frost wanted to apologize for his previous conduct. When he got outside there were very few words passed. Frost said: "How do you like the way I done?" Vaughn replying: "Oh, its all right." Frost then said, "You are a G. d. lying s. o. b.," and started at Vaughn. He had in his left hand the lower part of a broom handle, about 2½ feet in length, and still advancing, struck at Vaughn with the stick. Vaughn "jumped back" and undertook to get behind some part of a wagon standing in the yard. As Frost advanced he pulled a knife from his pocket, and was striking at Vaughn with both knife and stick, and Vaughn says: "I got out my pistol and started shooting. I was going round him and trying to get into the house." Vaughn did not know how many shots he fired, but was of the belief that he emptied his pistol, which was a 32-20, using black powder in the cartridges. Frost walked some distance from the point of shooting, and fell in the corner of the yard, about 18 or 20 steps from the house. Appellant shortly thereafter surrendered to the officers.

The boy, Virgil Frost, corroborated the testimony of appellant as to matters occurring after Vaughn had returned from the post office. He was present when Frost was abusing Mrs. Vaughn, and when the homicide occurred, and relates somewhat more in detail the passage of words between Mrs. Vaughn and Frost. The boy was carried through a rigorous cross-examination, but stood his ground well.

In an endeavor to make a case against appellant the commonwealth introduced only those witnesses who arrived on the scene after the shooting. They were neighbors, and apparently friends of both parties. Some arrived in less than thirty minutes after hearing the shots, or receiving information of the shooting.

These witnesses found Frost 18 or 20 steps from the house, in the yard; some of them assisted in removing the clothing from the body and testified as to the nature and position of the wounds on the body. Since their description of the wounds was illustrated by pointing to parts of their bodies, with the explanations "here" and "there," it is difficult for us to gather from the proof

whether the points indicated were those of entrance or exit of the missiles.

The deputy sheriff, who went to the scene, at a time not stated, but who viewed the body, gave the clearest proof on this point. He found that Frost was shot, as he thought, three times in the left side. He could not definitely tell whether the wounds he saw were at points of entrance or exit. One wound was in the left shoulder, which he thought did not penetrate. Another, on the same side went through. There were two wounds in the back or side, about one or two inches behind the arm. These were on the right side. The officer removed two bullets from the body "about middle way of the side."

The garments displayed showed the location of the wounds in about the same way as detailed, and they, by the presence of powder burns, indicated that the shooting was at close range, which comports with appellant's testimony. The theory of the commonwealth, without other than the circumstances related, was that Vaughn had shot Frost while fleeing, or after he had fallen. Both appellant and Virgil were considerably pressed to explain why the shots were in the back, if they were so. Appellant's explanation was that he was moving around Frost in an attempt to get into the house; he says he was very much excited. The boy could offer no explanation, other than after the first one or two shots, the smoke prevented him from seeing the relative positions of the parties. This was in substance the testimony on which the commonwealth rested its case.

Returning for the moment to witnesses for the commonwealth, who went to the scene shortly after the shooting, they, with one accord, testified that when they saw Frost's dead body lying in the yard, he had in his left hand the broom handle, and in his right a knife with a 2½-inch blade, opened. One witness for accused also testified that shortly prior to the shooting, she saw Frost start to his home, but turn around and go in the direction of Vaughn's home, talking loudly and making gestures in that direction.

From the recital of the evidence above, which is fairly given, in substance, it is clear to us that the commonwealth failed to make a case that should have been submitted to the jury, particularly after the evidence

(uncontradicted as it was) adduced in behalf of appellant.

The entire evidence was circumstantial, and was undoubtedly overcome by the testimony of appellant and his witness, Virgil Frost. In such a state of case it was clearly the duty of the court, at the close of the testimony, to have given an instruction to the jury to return a verdict of not guilty. In the recent case of Privitt v. Com., 271 Ky. 665, 113 S. W. (2d) 49, 52, we said:

> "It is a well-settled rule that, while it is not within the province of the trial court to take from the jury a criminal prosecution if there is any evidence tending to show that the defendant is guilty of the offense charged, yet, if the evidence introduced in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt of the offense charged, it is not only the right, but the duty, of the trial judge to instruct the jury to return a verdict of not guilty." Citing Begley v. Com., 250 Ky. 779, 63 S. W. (2d) 951, and other cases.

It is possible in this case that the trial court properly overruled the motion of defendant made at the close of the testimony for the commonwealth, since it was shown that Vaughn had killed Frost; however, the uncontradicted proof of appellant, which was corroborated by the boy, shows that while he perpetrated the act, he was forced to do so in his necessary self-defense, and not with the requisite intent and purpose.

On another trial, unless the commonwealth strengthens to a considerable degree its testimony, or should produce such as would raise a submissible issue of fact on the plea of self-defense, the court should direct a favorable verdict. In case there should be another trial, the court should interpolate in the self-defense instruction, at an appropriate place, the words, "real or to the defendant apparent." This omission is complained of in brief, and while giving the challenged instruction the closest scrutiny, we are not prepared to say that in its form the omission constituted a substantial error for which we would reverse, there is no reason why the words should not be included, since in one or more cases, though not applicable here, we have held the omission fatal. Martin v. Com., 78 S. W. 1104, 25 Ky. Law Rep.

1928. It is suggested that Section 891 of Stanley's Instructions contains a form which has been approved in a number of our opinions.

The court did not err in failing to instruct the jury on the appellant's right to shoot in defense of his home. Appellant made no case calling for such an instruction. Here the shooting, according to Vaughn's proof, was in sudden affray, and he only claimed that he shot in his own defense. Duff v. Com., 250 Ky. 555, 63 S. W. (2d) 593.

Judgment reversed and cause remanded for proceedings consistent herewith.