# Asher v. Commonwealth.

Oct. 23, 1945.

C. A. Noble for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

James Asher has been sentenced to prison for 10 years for killing Bill Muncy. He asks that the judgment of conviction be reversed because (1) the court erred in the admission of incompetent and prejudicial evidence; and (2) he was entitled to a directed verdict because the evidence showed that he shot Muncy in self-defense.

Muncy, who had been working in Ohio, was visiting in the home of his mother-in-law, Bessie Couch, where his estranged wife and children were residing. There was testimony that he was drinking heavily. Asher and a companion, Lawrence Asher, stopped in the Couch home, allegedly for the purpose of speaking to Muncy. At that time Muncy and his wife were up on a hill near the

house. Lawrence Asher went up where they were and the appellant remained in the house. He said he was there about 10 minutes, during which time he took two drinks of whiskey and was in the act of taking a drink of wine in what is referred to as "the lower room" when Muncy rushed into the room and walked over between two beds and got a pistol and his pocketbook and advanced toward him and placed his gun against his chest and shot him. He said he grabbed the gun, and while he and Muncy were scuffling it went off. He said also that he remembered little, if anything, about the affray after he was shot, and that he shot Muncy in self-defense. Bessie Couch and several other witnesses said they saw Muncy advance toward Asher and shoot him. All of them said, however, that they left the scene immediately and knew nothing further of the difficulty. Their testimony was to the effect that shortly after they left the house they heard two shots fired in rapid succession and then three additional ones. One of the appellant's witnesses said that Muncy's body was lying face down between the beds and that there was blood near the hearth, on one of the beds and on the floor near Muncy's body.

The Commonwealth produced no eyewitnesses to the shooting. Muncy's father reached the scene two or three hours after the shooting. He said there were five bullet holes in the body—three of them entering from the front and two from the back. He said there were powder burns around the bullet holes in his son's back. This testimony was admitted over the objection of the appellant, but the witness testified that he had seen bullet holes in the bodies of persons and animals and that he could tell where the bullet entered and left the body by the character of the holes made. He said also there were blood stains and two or three bullet holes between the beds. Johnny Muncy gave substantially the same testimony. The undertaker said also that two bullets entered the deceased's back. Ray Roberts went to the Couch home two or three days after the killing and he testified he found three bullet holes and blood stains between the beds and he extracted two of the bullets from the floor. It is contended that Roberts' evidence should not have been admitted because too long a period of time had elapsed between the killing and his investigation. We deem this contention to be without merit, because there is no showing whatever that anyone else fired the bullets

into the floor, as counsel for the appellant suggests might have been done. Furthermore, Roberts' testimony was merely cumulative, because two witnesses who visited the scene shortly after the killing testified relative to the bullet holes in the floor.

In insisting the testimony given by Muncy's father was incompetent, the appellant cites the case of Napier v. Commonwealth, 225 Ky. 384, 9 S. W. 2d 107. In that case a witness was permitted to testify from a shirt exhibited that the pistol was held against the shirt when it was fired. The jury had an opportunity to examine the shirt and to draw their own conclusions. Furthermore, the testimony of the witness corroborated a dying declaration. In that case it was held the testimony was prejudicial. The Napier case is not analogous to the one at bar, because Muncy's father was testifying as to what he actually saw both as to the bullet holes in the body and those in the floor.

Asher's own testimony showed he disarmed Muncy after he had been shot. Apparently, he did not shoot Muncy immediately after he got the pistol, because his witnesses testified they were out of the house and down by the branch when they heard two shots fired in rapid succession; and, furthermore, it is highly probable that the deceased was lying between the beds when the last three shots were fired into his body, two of which entered his back. Certainly these circumstances would warrant the submission of the case to the jury. It was for the jury to determine whether Asher used more force than was necessary to protect himself after he had disarmed Muncy. We have noted that Asher testified he could recall very little of what happened after he was shot, but two witnesses testified he told them that after Muncy shot him he took the pistol away from him and killed him. It is not without significance that three of the appellant's witnesses were said to have bad moral reputations. The recent case of Vaughn v. Commonwealth, 286 Ky. 712, 151 S. W. 2d 778, is not in point, because in that case there was an eyewitness to the shooting who testified it was done in self-defense.

It seems to us that Asher had a fair and impartial trial.

Therefore, the judgment is affirmed.