## White v. Commonwealth.

March 14, 1950.

S. M. Ward, Judge.

.Noble & Noble for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE KNIGHT—Affirming.

Appellant was indicted for the willful murder of

Charles Davis. On the trial, the jury convicted him of voluntary manslaughter and fixed his punishment at 10 years in the penitentiary. He appeals from the judgment based upon that verdict and urges reversal on two grounds: (1) the verdict was against the law and evidence in the case and was a verdict based upon passion and prejudice; (2) the court erred in not peremptorily instructing the jury to find appellant not guilty.

On the day of the killing, July 30, 1949, about 5:30 p.m., deceased, Charles Davis, and his companion, Elmo Adams, were crossing the concrete railroad bridge from Lothair over to the Black Gold mining camp. Near the center of the bridge they met appellant Ance White, his father Jacie White, his brother-in-law Ed Caudill, and a friend Elmer Bellamy, all crossing the bridge from the opposite direction, that is, going toward Lothair from the Black Gold camp. Deceased and Adams were unarmed and each was carrying a shopping bag containing some groceries and other things. As the result of what transpired when they met, Charles Davis was killed, and Elmo Adams was wounded by a shot, all admittedly fired by appellant.

There is little conflict in the evidence except as to two or three vital points which will be pointed out. The evidence for both the Commonwealth and the defense agrees that there was an exchange of words between deceased and appellant's father, Jacie White, when they met on the bridge; that after the exchange of these words, deceased knocked Jacie down and when he did so appellant shot deceased twice with a .38 automatic, killing him instantly. Commonwealth's evidence tends to show that appellant fired the shots immediately after his father was knocked down while appellant's evidence shows he fired the shot only after deceased had his foot drawn back to kick Jacie which might have resulted in his possible death from being kicked off the bridge to the water below, a distance of about 30 feet. There was conflict in the testimony as to where Jacie was lying when he fell; that of the Commonwealth showing that he fell between the rails or on one of the rails near the center of the bridge which was 13 feet wide. The evidence for appellant shows Jacie fell near the edge of the bridge, which had no guard rails, with part of his body hanging over the edge. There was also conflict in the evidence as to the words that passed between Jacie

White and Charlie Davis when they met that started the argument and brought on the attack. All the parties involved were miners and in the background there are indications that there was in progress a wildcat strike and some miners were working and others were refusing to work. According to the testimony of Elmo Adams, who was walking across the bridge with the deceased and who was the principal witness for the Commonwealth, Jacie stopped as they met and, shaking his finger in the face of deceased, said "I want you to know, and the rest of the men on the hill to know that you can't scare me no dam where." To which deceased replied, "Get out of my face," and proceeded to hit Jacie with his fist, knocking him down. The version as told by Jacie White was that deceased came up to him and said "When are you going to line up with us fellows and put those other men back to work"? To which he said he replied in substance that he was abiding by the union contract and that he had to work to support his family; that deceased got angry, called him a gray headed s. o. b. and drew back his fist and knocked him down.

We thus have conflicting testimony as to how the argument started and whether or not there was such apparent danger to the life of Jacie White as justified his son, appellant, in killing deceased to save his father's life. If Jacie was simply knocked down near the center of the bridge, as the Commonwealth's evidence indicates, there was no justification for appellant's killing his assailant. If he was near or partly over the edge of the bridge and deceased was about to kick him off to his possible death, as appellant's evidence indicates, there might have been justification for his killing deceased. This presents a factual question which was for the jury to decide. The right to defend his father under these circumstances was as great as the right to defend himself and that question was submitted to the jury in a separate instruction which is not complained of and the jury evidently believed the testimony of the Commonwealth's witnesses rather than those of the defendant.

The rule in cases of this character is that where there is no denial of the firing of the fatal shot, as is true here, the question for the jury is whether or not the one charged committed the act in good faith in self defense. Barker v. Commonwealth. 304 Ky. 13, 199 S.

W. 2d 713, and cases therein cited. In homicide cases where the Commonwealth proves and defendant admits the act of homicide and accused produces testimony to show excuse therefor, whether the act of shooting and killing deceased is in self defense is a question for the jury. Francis v. Commonwealth, 260 Ky. 590, 86 S. W. 2d 310. In the cases relied on by appellant, such as Vaughn v. Commonwealth, 286 Ky. 712, 151 S. W. 2d 778, where the uncontradicted proof of appellant showed that he was forced to kill deceased in his necessary self defense; and in Privett v. Commonwealth, 271 Ky. 665, 113 S. W. 2d 49, where the plea of self defense was clearly and thoroughly established by the evidence; and in Sayler v. Commonwealth, 264 Ky. 53, 94 S. W. 2d 281, where there was no evidence to sustain a conviction or upon which to base a reasonable inference of guilt; it was held that it was the duty of the court to peremptorily instruct the jury to acquit the accused, and failure to do so was reversible error. We also approve of the definition of self defense as set out in Minton v. Commonwealth, 79 Ky. 461, cited and relied on by appellant, but we do not think any of these cases are controlling under the disputed facts of this case, which the jury had the right to pass on.

We have read and carefully considered all the evidence and, without further detailing it, we think it was sufficient to take the case to the jury and that the court did not err in refusing to peremptorily instruct the jury to find appellant not guilty. Nor can we say, after consideration of all the evidence, that the verdict was against the law and the evidence and was the result of passion and prejudice.

Wherefore the judgment is affirmed.