# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Sweazy v. Commonwealth.

Decided October 7, 1921.)

### Appeal from Nelson Circuit Court.

1. Criminal Law—Evidence.—Where the testimony in a criminal prosecution is contradictory, it cannot be said that the verdict finding the defendant guilty is flagrantly against the evidence where the preponderance of testimony supports the verdict.

2. Rape—Evidence.—It was not error to allow the prosecutrix upon the trial of the defendant for detaining a woman against her will to state that when she saw him that day "he dropped his head and went on down the street" when it was shown that he was within eight or ten feet of her and saw her and her uncle standing there together; but if error, it can not be said to have substantially prejudiced the defendant's rights so as to render his trial unfair.

3. Criminal Law—Impeachment of Witness.—It is improper for counsel to ask a witness if he does not stand charged with a particular offense, since that is not the proper method to discredit or impeach the witness, but the effect of the impropriety was, no doubt, removed when the court sustained an objection to the question and admonished the attorney not to repeat it, which was obeyed by him; particularly so when from the whole record it does not appear that it substantially prejudiced defendant's rights.

4. Criminal Law—New Trial.—Courts are reluctant to grant a new trial for newly discovered evidence and will not do so, unless it be of such a preponderating nature as to render it reasonably probable, in the light of the entire record, that a different verdict

would be returned if it had been introduced and considered by the jury.

NAT W. HALSTEAD and OSSO W. STANLEY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Ezra Sweazy, was convicted in the Nelson circuit court of detaining a woman against her will with intent of having carnal knowledge of her himself, an offense created by section 1158 of Kentucky Statutes, and his punishment was fixed at the minimum term of two years' confinement in the penitentiary. From the judgment pronounced upon the verdict he appeals and his counsel urge as grounds for reversal, (1) that the verdict was flagrantly against the evidence; (2) incompetent evidence introduced by the Commonwealth over his objections; (3) misconduct of the prosecuting attorney during the trial, and (4) newly discovered evidence material to his defense.

1. The prosecutrix, Ruby Judd, testified that the offense was committed on the morning of January 20, 1921, between 7:30 and 8:00 o'clock in front of McElroy & Williams' gate on the Simpson's creek turnpike about one and one-half miles from Bloomfield, and the conduct of the defendant to which she testified, and which we will not incorporate in this opinion, leaves no doubt of his intention if he was guilty of it. The witness was on her way to school at Bloomfield and she was overtaken at the point by defendant, according to her testimony, who was riding a mule and leading another, and as he overtook her at the gate he started as if to enter it when he dismounted and committed the acts complained of, addressing a proposition to her at the time in very vulgar terms. The scene of the crime, as laid by the witness, was near a branch at the foot of a hill and just over the hill towards Bloomfield there lived a Mrs. Boblett, and the prosecuting witness stopped at her house and made complaint of her treatment at the hands of defendant, who had just passed the Boblett house on his way to Bloomfield. Like complaint was also made to the teacher of the prosecuting witness when she arrived at Bloomfield, but according to the teacher and two of the pupils she stated that she did not know the name of her assailant but would know his

face.  At the noon hour she went down into the town of Bloomfield and met her uncle, Mr. Sherrard Montgomery, to whom she also complained, and the two started a search for the defendant and went through some of the tobacco warehouses, but failed to find him in either of them, but they did see him pass by on the streets.  The young lady also complained to her mother upon her return home from school that afternoon.

J. M. Stevenson testified for the Commonwealth and stated that he saw defendant pass his house some half or three-quarters of a mile beyond where the offense is alleged to have been committed at about 7:30 o'clock on the same morning, and he was riding a mule and leading another one.  Somewhere near the same place, Oscar Armstrong, who was traveling on the pike in a buggy, met the prosecuting witness, who was walking, and about seventy-five yards beyond her he met the defendant traveling in the same manner as stated by the other witnesses, and they were both going in the same direction towards Bloomfield.  Johnny Smith, a colored boy, was attending a colored school either in Bloomfield or in that direction and he was also traveling the pike walking, and when he got within perhaps one hundred yards of the McElroy gate where he could see around the bend of the road he saw defendant, who had passed him further back traveling in the manner stated, but he was off his mule and had the prosecuting witness by the hand, which he let loose and got back on the mule and started on his journey when he discovered the witness approaching.  Opposing this substantially stated testimony, introduced by the Commonwealth, is that of the defendant, who admitted traveling along the pike that morning as indicated by the prosecuting witnesses, but said that he did so at a much earlier hour of the morning and that he did not see the prosecuting witness at any place that morning, nor did he commit any of the acts which she attributed to him. He introduced three or four witnesses, some of whom were closely related to him, who testified that they saw him pass along the pike at about the early hour which he states, but all of them saw him at places beyond the McElroy gate, and only one of them spoke to him, and neither the defendant nor any of his witnesses pretend to say that they examined any timepiece to ascertain the correct time, and their testimony is based solely upon their best judgment, fortified by no fact indicating certainty.  If, however, defendant's witnesses, who testified to the hour

at which he passed along the pike, were absolutely correct as to the time it would not be by any means conclusive of his innocence, because the offense, if committed at all, was after the witnesses saw him and beyond the places where they saw him, and the utmost effect which could be given to their testimony would be persuasive only, upon the theory that he uninterruptedly continued his journey after passing the places on the pike where they say they saw him.

There were also character witnesses introduced by defendant showing the bad reputation of the mother of Ruby Judd for morality, and like witnesses introduced showing the good character of defendant.

With the testimony in the record, as we have indicated it, we are unable to agree with the contention of counsel that the verdict is flagrantly against the evidence. On the contrary, we think it largely preponderates in support of the verdict. In all contested trials there is necessarily a contrariety in the testimony, to reconcile which is the chief function of the jury, and if it could be said that this verdict is flagrantly against the evidence there could scarcely be a conviction upheld under a plea of not guilty. We, therefore, find no merit in this ground.

2. The incompetent testimony complained of under this ground was that of the prosecuting witness and of her uncle, Sherrard Montgomery, in detailing what occurred when defendant passed them on the streets of Bloomfield. Miss Judd said, "I grabbed uncle Sherrard and told him there he was; he dropped his head and went on down the street." Upon the same point Montgomery testified, "She grabbed me and says here he is right here, uncle Sherrard," and that at that time defendant was within ten or twelve feet of them and that "he looked up at me and turned around and walked down the street, and didn't say a word and I didn't say a word." The witness testified that he did not know whether defendant heard the remark of the prosecuting witness or not, but that "he ought to have heard it." The only fact testified to in this complained of testimony that could in the least affect the case one way or the other is the statement made by Miss Judd that "he dropped his head." All of the other testimony about meeting him on the street and what Miss Judd said in identifying him possesses no prejudicial element, and the fact of his dropping his head could only be remotely construed into a consciousness of guilt, provided he was aware of the presence of the wit-

nesses. It could also be treated as only an ordinary oc-currence perfectly consistent with innocence. Upon the whole we regard it as having but little, if any, weight the one way or the other. At best, if erroneous at all, it can not be considered as substantially prejudicial to defend-ant's rights, which must exist before we are authorized, under the provisions of section 271 of the Criminal Code, to reverse a conviction for any error. We have thus far considered this testimony in the light of its improper ad-mission, but we are by no means certain that the sur-rounding circumstances, consisting of the proximity of the defendant to the witnesses, and his looking at them, did not authorize the court to allow it to be introduced. This ground will also have to be denied.

3. Under this ground the only misconduct of the prosecuting attorney complained of is his asking one, or perhaps two, of the witnesses introduced by defendant whether they did not stand charged with the same or a similar offense. The court promptly sustained ob-jections to those questions and warned the attorney not to persist in such inquiries and which he obeyed. Of course, the method attempted was not the proper one to discredit or impeach a witness. It neither conformed to any provision of the code for the impeachment of wit-nesses, nor to any adjudicated rule upon the subject. But, we are convinced that the prompt action of the court in sustaining objections to the questions and in admon-ishing the attorney and not allowing the witnesses to ans-wer them, removed all prejudicial effect, if any, pro-duced by asking them. It has often been said by this court that in view of the imperfections of human nature and zeal of counsel in the conduct of a trial it is next to, if not quite, impossible to try a case absolutely free from error. And it is in recognition of these facts that the rule has been established, either by the courts or by the legis-lature, that the error must substantially prejudice the rights of the complaining party before a new trial will be granted therefor. Applying that rule we see no reason to interfere with the verdict upon this ground.

4. The only newly discovered evidence which we deem it essential to consider under this ground is an affidavit filed by Hugh Matthews, who states therein that he traveled the Simpson's creek pike on his way to Bloomfield on the morning of January 20, 1921, at an early hour and that he attempted to leave a lantern, with which he started from his home some six or eight miles

away, at the home of Ruby Judd and that he could not
arouse any one on the place and, therefore, presumed
they were still asleep, and, that he went on to Bloomfield
and at what he supposed was about the hour of seven
o'clock he saw defendant in one of the warehouses in
that town.   The same comment might be made of this
affidavit as we have heretofore applied to the testimony
of some of defendant's witnesses, *i. e.*, that the discov-
ered witness conjectures only as to the time when he
states he saw defendant in the warehouse in Bloomfield.
But, aside from this, the rule is that "as a general propo-
sition courts are somewhat reluctant to grant a new trial
upon this ground (newly discovered evidence), because
it is one which opens a ready door not only for the com-
mission of perjury, but for the perpetration of fraud by
the party relying on it." Johnson v. Commonwealth,
188 Ky. 381.   The same case, and others referred to
therein, furthermore hold that to authorize a new trial
upon the ground of newly discovered evidence it must
be of such a controlling character "as that it would pos-
sibly change the verdict," and that to deny it would plain-
ly be substantially prejudicial to the rights of the litigant
relying on it.   Therefore, if we consider the testimony of
Matthews as neither cumulative nor impeaching in its
nature, we are by no means prepared to say that in the
light of all the testimony in the record, even if he was
positive as to the hour he saw defendant in Bloomfield,
his testimony is of such a controlling character as that it
would most likely affect the verdict.   The testimony of
the newly discovered witness, as will be seen, is directed
toward the establishment of the alibi portion of the de-
fense, and in view of the clear and positive testimony of
the prosecuting witnesses disproving the alibi we think
the testimony of Matthews was comparatively unimpor-
tant, especially when it is considered that the time fixed
by him, which is the all important element in his testi-
mony, is purely conjectural.

Finding no error prejudicial to the substantial rights
of the defendant the judgment is affirmed.