## Kirk et al. v. Commonwealth.

(Decided Feb. 21, 1933.)

HILL & HOBSON, WILLIAM R. McCOY, and A. J. KIRK for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Henry Kirk and Fred Pack who were jointly indicted with Herbert Pack for the murder of their uncle, Sam Endicott, were tried together and found guilty of voluntary manslaughter, and their punishment fixed at 15 years' imprisonment each. They have appealed.

Grounds argued for reversal are: (1) That the verdict of the jury is flagrantly and palpably against the weight of the evidence; (2) that the court committed prejudicial error in refusing to grant a new trial because of newly discovered evidence; (3) improper and prejudicial remarks made by the commonwealth's attorney in his closing argument to the jury.

Undisputed facts are that appellants went to the home of deceased rather early on Sunday morning in January, 1932, after having procured some moonshine liquor, and after their arrival there more liquor was procured. Deceased took a drink or two with them, but soon left to look after duties in connection with his employment with a pipe line company, and did not return until afternoon. He was accompanied on this trip by John Witt. In the meantime, appellants, according to the evidence, left the place for a short time, but returned, and they and others congregated at a barn some 50 or 60 yards from the house where they engaged in drinking and in such threatening and boisterous conduct as to attract the attention of people some distance away.

John Witt testified that when he and deceased passed by the barn on their return to the latter's home, Henry Kirk, Herbert Pack, Fred Pack, and Jim Endicott, a son of deceased, were there; that appellants appeared to be drinking, and, when they passed, Henry Kirk said, "You God dam fellows got any pistols or clubs or any liquor?" to which deceased replied in the negative. Deceased went on into the house where

he sat down and engaged in conversation with his daughter. In a short time Kirk and his companions followed toward the house. It appears that Fred Pack and Jim Endicott engaged in a quarrel culminating in a fight in which Endicott was kicking at Pack, who in turn struck and knocked him down twice. Some time during this difficulty, Herbert Pack went into the house and told deceased that the parties were fighting and suggested that he go out and stop the hostilities. From this point there is such marked conflict in evidence on all material questions as to indicate an indifference on the part of some of the witnesses as to the verity of their statements.

. Myrtle Endicott, a daughter of deceased, testified that her father went on the front porch and ordered Henry Kirk and Fred Pack who were in the yard to get out; that at the time Henry Kirk was standing between the house and front gate swinging his pistol in his hand, and Fred was standing with his back to the gate holding a paling; that when her father told them to get out Henry said, "Let that God dam son of a bitch come out here and I will shoot his God dam brains out." That her father again told them to leave, and Fred called him a vile name; that deceased then went out and pushed the gate open, but at that time because Henry was standing swinging his gun she feared her little children would be hurt so she put them inside, and, when she turned again, she saw her father going out the road; that Fred Pack, who was following him, raised on tiptoe and struck him on the head with the club; that at the time her father was doing nothing except walking fast with his hands in his pockets; that when her father received the blow his hat fell off, and he staggered on as though he could hardly walk. Her attention was then attracted to Henry, who had gone out into the road, and she followed him; that he was standing opposite her father jerking open a knife, and her father ducked and dodged, but before he could get straight Henry shot him the first time; that after the first shot her father wheeled around, and Fred Pack said, "Shoot him again," whereupon Henry fired three shots more; that after Henry quit shooting she went to her father who had fallen, took hold of him, and asked Fred Pack not to do anything more to him, as he had already killed him, but that Fred kicked him again, and he rolled over the bank.

The evidence shows that there were at least three gunshot wounds in the body of deceased, and that there was a sunken and soft place in the back of his head near the crown. Some of the witnesses testified that there was a hole in the head, and that the skull had been crushed or fractured, and that there were bruises and marks on the body down to the small of the back.

The evidence of Delma Endicott, a younger sister of Myrtle, is practically the same as that of Myrtle. They were corroborated in many of their statements by other witnesses, and also by evidence as to conditions shown after the tragedy, and especially the location and nature of the wounds on the head and body of deceased. There is also evidence indicating that Henry Kirk was making considerable display of his pistol during the day, and boasting of the fact that people were afraid of him when he had his pistol; that after the tragedy he said, "Yes I killed him. I guess by this time he is in hell," and other similiar statements.

Evidence of appellants indicates that when deceased came out on the porch his manner was threatening and he said, "I will kill every one of you God dam sons of bitches." That at the time he came out they had gone or immediately thereafter went out of the yard; that he ran out with an open knife in his hand and began striking at Fred Pack, cutting him on the side of the head and face; that Fred struck him over the head with a piece of paling which flew out of his hand when the lick was struck, and deceased continued the assault; that a young son of Fred Pack, who was nearby and witnessed the affray, called out to Henry Kirk that deceased was killing his father, and asked him to go to the latter's aid; thereupon, Henry did approach, take hold of his shoulder and ask him to desist, but deceased then turned upon Henry and began striking at him with the knife, and Henry pulled his pistol and shot four times in rapid succession. They testified that deceased did not fall until after the last shot was fired, and he pitched forward and rolled over the bank. They immediately left the scene. Carl Endicott heard the shooting, went to where his father had fallen, then followed in the direction in which appellants had gone. When he came in view he exchanged a number of shots with them, but there is a conflict in evidence as to who opened fire. A number of witnesses testified that they went to the home of the deceased shortly after the tragedy

and saw Delma Endicott with a knife, or heard her say that she had her father's knife, and that there was blood on the knife and on her hands. Mrs. Marcum, a neighbor, testified that she saw the child with the knife, and that at her request it was given to her, but she saw no blood on the knife or on the child's hands. Delma testified that she picked the knife up some distance from her father's body, but that it was closed. The Endicott girls testified that they saw blood on Fred Pack's face, and the evidence clearly establishes that he did receive a cut which required four stitches to close. Appellants were corroborated in their statements by a number of witnesses.

In this confusing and conflicting state of evidence it was for the jury to determine the credibility of the witnesses, and the weight to be given their evidence. There was evidence upon which they might have based a verdict for the higher degree of the offense charged. There is ample evidence of a most convincing nature to sustain their verdict finding appellants guilty of manslaughter. A verdict returned on conflicting evidence will not be disturbed on review by the Court of Appeals, where, as in this instance, there is substantial evidence to sustain it. Bartholomew v. Commonwealth, 201 Ky. 849, 258 S. W. 677; Epling v. Commonwealth, 233 Ky. 407, 25 S. W. (2d) 1022; Pickelsimer v. Commonwealth, 224 Ky. 381, 6 S. W. (2d) 457.

One of the grounds for new trial is newly discovered evidence. By way of supplemental motion with supporting affidavits of the alleged newly discovered witnesses, it is made to appear that a short time before the homicide, Frank Webb and Harlan Webb heard Sam Endicott say, ''He would like to empty his gun into Henry Kirk, that he would like to see somebody kill him and for a little he would kill him himself,'' and at the time he had a pistol in his hand; that they did not make this known to Henry Kirk until after the trial. In their own affidavits appellants merely state that since the trial they have discovered this evidence, and they did not know of these facts before the trial. There is no showing whatever that this evidence could not have been discovered by the exercise of proper diligence, or that appellants used any diligence whatever to discover it. In such circumstances the court did not err in refusing to grant a new trial on this ground. Duckwall

v. Commonwealth, 204 Ky. 442, 264 S. W. 1062; Todd v. Commonwealth (Ky.) 93 S. W. 631, 29 Ky. Law Rep. 473, 93 S. W. 631; Calico v. Commonwealth, 145 Ky. 641, 140 S. W. 1036; Mills v. Commonwealth, 223 Ky. 165, 3 S. W. (2d) 183.

Ordinarily a new trial will not be granted because of newly discovered evidence of threats. Sutton v. Commonwealth, 221 Ky. 219, 298 S. W. 707; Worley v. Commonwealth, 221 Ky. 638, 299 S. W. 542.

Furthermore, the matter of granting or refusing a motion for new trial on the ground of newly discovered evidence rests in the trial court's discretion, and should not be granted unless the evidence would likely have a controlling effect on the verdict of the jury. Williams v. Commonwealth, 230 Ky. 327, 19 S. W. (2d) 964; Shepherd v. Commonwealth, 230 Ky. 611, 20 S. W. (2d) 466; Lewis v. Commonwealth, 190 Ky. 160, 227 S. W. 149.

In the case of Sweazy v. Commonwealth, 193 Ky. 1, 234 S. W. 753, attention is called to the fact that courts are reluctant to grant a motion for a new trial on the ground of newly discovered evidence because it opens the door for the commission of perjury and the perpetration of fraud.

In the circumstances, it is manifest that the court did not err in refusing to grant a new trial.

In their final ground urged for reversal, appellants first call in question a statement made by the commonwealth's attorney in his closing argument to the effect that all the commonwealth had to do to make out a case was to show that the man had been killed, and who had killed him; and then it was incumbent upon the defendant to prove that he did not do the killing, or, that if he did do it, he was justified in so doing.

In the case of Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732, 735, where it was shown that one man was dead and another admitted that he shot and killed him, this court said: "With these facts established, it could not be said that there was no evidence of the guilt of Simmons. Simmons' admission that he killed Dugard made it incumbent upon him to justify or excuse his act by evidence."

The evidence here discloses that Endicott was dead, that Pack was seen to strike him over the head with a club, and that Kirk was seen to shoot him, and he there-

after admitted to witnesses that he had shot him. The establishment of these facts made it incumbent upon appellants to justify or excuse their act by evidence. The entire argument of the commonwealth's attorney is in the record, and we find that he did not rest the case merely on the showing that Enlicott was dead and that appellants had killed him, but, in his further discussion of the evidence, in connection with the instructions given by the court, clearly indicated to the jury that before they could convict, they must believe that appellants acted willfully, maliciously, and not in their necessary self-defense.

Even if the Simmons Case did not remove all doubt as to the propriety of the statement complained of, it it unquestionably manifest that the statement was not prejudicial when considered in connection with other statements of the attorney for the commonwealth.

Argument that the commonwealth's attorney made further prejudicial statements in his references to appellants' plea of self-defense and to the duty of the jurors to so acquit themselves as to bring about a wholesome respect for the law and win the commendation of their children, etc., is equally lacking in merit. We have carefully considered the argument as a whole and find no substantial departure from the bounds of legitimate argument, and certainly nothing calculated to mislead or unduly sway a jury. On the contrary, we are impressed that the commonwealth's attorney is to be commended rather than criticised for the manner in which he discharged his duties.

Finding no prejudicial error in the record, the judgment is affirmed.