## Huff v. Commonwealth.
(Decided Nov. 25, 1938.)

J. C. BURNETTE for appellant.

HUBERT MEREDITH, Attorney General, and JOHN M. CAMP-BELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

This appeal is from a judgment following a verdict declaring appellant guilty of manslaughter, and imposing a penalty of imprisonment of twenty-one years. He was charged with having murdered Elisha Owens on July 25, 1936.

This is a second appeal. The court reversed the judgment of the first trial because certain testimony relating to statements made by deceased, under alleged belief of impending death, was erroneously admitted. 270 Ky. 36, 108 S. W. (2d) 1044.

Appellant and deceased worked in the coal mines at Wayland. Appellant had worked on the day of the homicide (Saturday and pay day) until about noon, and started home. When he got to a point in the road near Gibson's store, leaving the main highway to go to his home, he saw some one covered with débris lying in a garage. He learned upon inquiry that it was Owens, and that he was drunk. Passing on he went to his home, and later was eating his evening meal when Owens came up the road to his home and called for him. A member of the family answered and invited Owens to come in and have supper, but he declined, saying he wished to see appellant, who then walked through the house to a back door around to the front, whereupon he and Owens went down the road a short distance and sat down. Owens told appellant that he had come for some money which appellant owed him. Appellant replied that he intended to pay him as soon as he could, but that he, Owens, owed him $20 which he wanted credited.

The discussion brought on sharp words, the feeling becoming intense, and both men started to get up. Owens took hold of appellant's shoulder with his left hand, pulled him down, put his right hand in the bosom of his shirt and insisted on payment or he would kill him. At this point appellant jerked out his pistol and fired three shots, and when Owens failed to loosen hold,

fired twice into the air, whereupon Owens released his hold, and fell mortally wounded. Appellant then went back to the house, and had some one call for an ambulance. Owens was taken to a hospital where he died about midnight.

The details thus far given are taken mainly from appellant's testimony, wholly so as to what occurred after Huff was called out of the house, and up to the time of the shooting. There was no other eyewitness to the homicide.

The commonwealth relied upon circumstances from which the jury concluded that the taking of Owens' life by Huff was not in defense of his life. These circumstances consisted of proof which evidenced previous ill feeling on the part of appellant, due to a long continued effort on the part of deceased to collect his debt; at times garnisheeing, or attempting to garnishee, appellant's wages. Also by proof of threats made at various times by appellant toward deceased, all growing out of the money differences, and other circumstances developing, as we take up the grounds urged for reversal. They are as follows:

1. The verdict of the jury is not sustained by the evidence, and is flagrantly in conflict therewith.

2. The court permitted introduction of incompetent and irrelevant evidence.

3. Improper argument of counsel for the commonwealth.

Taking up the first ground, we say as we have frequently said, that when accused admits the homicide and endeavors to justify his act on the ground of self-defense, it becomes incumbent upon him to establish facts which will satisfy the jury that the homicide was excusable. He fails in this particular, unless from all the evidence it be convincingly shown that the killing was in self-defense. Privitt v. Com., 271 Ky. 665, 113 S. W. (2d) 49. Otherwise the determination is one solely for the jury. Kirk v. Com., 247 Ky. 666, 57 S. W. (2d) 658; Reed v. Com., 273 Ky. 607, 117 S. W. (2d) 589, 116 A. L. R. 673.

A verdict is not flagrantly against the evidence when it is reasonable for the jury to find from the facts and circumstances that accused is guilty. The function of measuring the testimony, and giving it due weight

under proper instructions, is for the jury, and when the evidence, even though it be circumstantial, affords a fair and reasonable ground upon which the verdict might rest, we can not overturn the verdict. Shepherd v. Com., 236 Ky. 290. 33 S. W. (2d) 4. One of the issues in self-defense cases, under proper instructions, is whether or not the accused used more force than appeared to accused to be reasonably necessary. Duke v. Com., 191 Ky. 138, 229 S. W. 122. Such conclusion might well have been reached by the jury without consideration of circumstances leading to the difficulty.

The commonwealth introduced a witness who had seen Owens lying in the garage. Later in the afternoon, the witness says, Owens came up the branch and offered witness some liquor. Owens had two pints, one open and one unsealed, as was later developed. He did not see Owens with a weapon. After Owens passed, and in about thirty minutes, witness heard five or six pistol shots; went up the road and found Owens lying in the road, a short distance from appellant's home. This witness saw no pistol around the body, nor is there any evidence introduced showing that Owens was armed. His body was examined, and there was no weapon of any kind on or about his person.

Another witness says that appellant came to his home, near the scene of the homicide, and told witness' wife to call the hospital, which she did. Appellant said that he had shot deceased five times, but he hoped he would get well, and told witness to "go up and do all you can for him." This witness also said that appellant remarked that deceased was "making for his gun, but I beat him to it." Accused also said that Elisha had threatened his life and he had tried "to break in on him," and that he could prove that.

Mrs. Owens testified that her husband, who had been a merchant, had difficulty in collecting an account due from appellant. That at one time he attached some corn belonging to him. The account was $196.32, and appellant denied $20 of it, and this was not included in a later judgment against appellant for $176.32. After judgment some time in 1934, deceased had a garnishment served on appellant's employer. On July 24, 1936, the day before the homicide, deceased went to a magistrate and obtained another attachment, but this was not served on appellant. The papers were returned to Mrs. Owens two days after the homicide. The un-

served attachment was introduced in evidence over objection of appellant, and this is one of the grounds urged for reversal.

It is shown that after the first and second garnishments were issued appellant became much incensed, and on several occasions was heard to say that if Elisha Owens ever got out another attachment, "it wouldn't end as it did before." Also that he would kill any man who undertook to attach his property. One such statement appears to have been made after the last attachment was gotten out.

The objection made with relation to the above testimony is two-fold. It is complained that the introduction of the paper was incompetent and prejudicial, as was testimony relating to the several attachments. We do not think so, since it is competent to show feelings, passion and propensities under which parties meet and act; experience and observation have shown that a conclusion may be drawn from acts, performed in a certain manner tending to show that accused acted from a particular motive. "Any motive rendering the killing probable or explaining it against inherent improbabilities, or otherwise helpful to the jury as a circumstance, may be proved against defendant, as his conduct before committing the offense may be important even though it is not indispensable to a conviction, that a motive should appear." Bishops New Cr. Pro., section 629. See Taylor v. Com., 266 Ky. 325, 98 S. W. (2d) 928, in which we held evidence of this nature was competent for the purpose of showing motive, and there quoted Frost v. Com., 258 Ky. 709, 81 S. W. (2d) 583, cited with a number of cases as bearing on this point [page 931]:

> "It is next argued that the court erred in admitting evidence concerning appellant's attention to Mrs. Collins and his threatening attitude when spoken to by others about the matter, but this contention is without merit since such evidence is competent as bearing on the question of motive or the state of mind of accused toward deceased."

It is contended that the testimony as to certain uncommunicated threats was incompetent and prejudicial, because these alleged threats were too remote. One was said to have been made about fifteen months prior to the killing; another in "the fall of the year," evidently meaning the fall of the year previous, since the

homicide occurred in July. It is also contended that the alleged threat, "I will kill any damn man that attaches me," was of a general nature, hence incompetent.

We see no merit in the contention that the threats were incompetent because the name of deceased was not mentioned. We have held threats of a general nature to be competent, where the language used indicates a purpose to do some one harm, because of an act or certain acts done, or which might later be done. This character of evidence is competent for the purpose of showing the state of mind of the accused. Wood v. Com., 246 Ky. 829, 56 S. W. (2d) 556. In this case an officer had said he would kill any man running away from him. Such testimony is permissible to show malice. Benge v. Com., 264 Ky. 28, 94 S. W. (2d) 38.

The general rule is that direct threats made by one against another, or general threats, if made a long time prior to the homicide, are incompetent because of remoteness. Turk v. Com., 239 Ky. 55, 38 S. W. (2d) 937. However, we have held that long passage of time between the making of a threat, and the act, does not necessarily make the evidence incompetent. In Gambrel v. Com., 241 Ky. 39, 43 S. W. (2d) 335, the threat was made four years prior to the homicide, yet it was admissible where ill feeling between the accused and deceased was shown not to have abated in the meantime. The same in Fleenor v. Com., 255 Ky. 526, 75 S. W. (2d) 1, where two years had elapsed. See, also, Conn v. Com., 245 Ky. 583, 53 S. W. (2d) 931; Privitt v. Com., 271 Ky. 665, 113 S. W. (2d) 49. In the last-named case the threats were four years prior to the act, yet we said [page 53]:

> "* * * but if they were of a nature going to establish guilty motive exclusively we doubt if the objections against it are sufficient to authorize their exclusion. However, the alleged threats, if made, were in the main conditional, i. e., a statement of appellant as to what he would do, if he was again assaulted by deceased in the manner that was done by the latter at the election referred to. In such circumstances we do not regard the alleged threats as of much, if any, incriminating value, but at the same time we are not prepared to say that they were entirely incompetent."

Here there is testimony of a threat made three

years previous, another fifteen months, and still another in less than a year, and one nearer in point of time and previous to the homicide. Some were direct and some general, but all having to do with the collection of appellant's debt by attachment process. Since there is ample competent proof of a continued ill feeling on the part of accused toward deceased, the evidence objected to was competent.

Contention is made that the court committed error because certain clothing (some showing bullet holes) was permitted to be introduced by the widow of deceased, and lacked sufficient identification. There is little merit in this contention. Counsel for Commonwealth asked the witness: "Do you recognize the shirt as being the one he wore off from home? A. That is the shirt he wore off from home."

Witness said that the shirt was the same, and in the same condition as it was when introduced on the former trial. Witness further said that the garments were the same, and in the same condition as they were when her husband's body was brought home, "except when I received the body they were wet with blood; today they are dry in blood." The Court properly admitted this testimony. Counsel objected to a school teacher's testimony describing the bullet wounds, the number thereof in the body of deceased, and points of entrance and exit. It is argued that such testimony is incompetent unless given by an expert, assuming that by "expert" he means a physician.

This evidence was given in an intelligent manner, and showed some knowledge on the part of witness as to anatomy. It may be that he went too far in giving his opinion as to entrance and exit points, but we can not see how this was prejudicial when others had testified as to the number and nature of the wounds, and when defendant himself produced the undertaker, whose testimony did not differ materially from that of the teacher. This witness gave testimony which clearly showed entrance, range, and in some cases points of entrance and exit.

We come now to the point which appellant stresses in endeavoring to show prejudicial error. This relates to statements made by deceased shortly before he died. It is insisted that the ruling of the court in the former opinion, reversing the judgment on the sole ground of

incompetency of this evidence, must prevail on this review. A brief perusal of the first opinion will show the existence of quite a different state of facts and circumstances from those appearing on the record now before us.

On the former appeal witness Ramey testified that he got to the place of homicide, where deceased was lying in the road, about five minutes after he heard five or six shots. Owens said to him, "Get me to the hospital as quick as you can, I am killed." Asked if Owens said how the trouble occurred, witness said, "Not exactly," but Owens said: "Why did this man want to shoot me up and me only begging to him?" On the first trial the first part of the statement was admitted, but the latter part rejected.

A reference to the former opinion will show that deceased made later statements upon being importuned by Ramey, and another witness. These were made after Owens had been given ardent spirits which seemed to revive him, and he expressed the belief that he would "pull through." After he was carried to the hospital, and after the administration of a narcotic, Owens, upon being asked if he desired to make a statement, said, "I don't care." He then made a statement which was written down, the substance of which was that appellant shot him and he was begging him not to shoot; that he had attached Huff's time, and "he just walked up and shot me." This paper, unsigned, and not read or approved by Owens, was allowed to be introduced. We held that this was error for two reasons, first, because the purported statement was not made in extremis, as we have construed that term; secondly, because the paper was unsigned and unapproved. See Eastridge v. Com., 195 Ky. 126, 241 S. W. 806.

As to the first statement made to Ramey, and which was the only one testified to in the case here, we found no fault in our former opinion, and the statement, "Why did this man want to shoot me up, and me begging to him," was excluded, which left only the statement, "Get me to a hospital, I am killed." This was the whole testimony on the second trial in respect to dying declarations. Ramey was the only witness offered on this point.

In the former opinion we concluded that the statement, "Get me to a hospital as quick as you can, I am

killed," was a sufficient expression of belief of impending death to uphold a dying declaration, ample support for which conclusion is found in Walls v. Com., 257 Ky. 478, 78 S. W. (2d) 322, and Turner v. Com., 268 Ky. 314, 104 S. W. (2d) 1087. This being true it follows that a statement relating to the shooting, if of fact and not mere conclusion, was properly admitted as a dying declaration.

It may be gathered from the record that the latter part of the statement made to Ramey was not allowed to go to the jury. The record is in such condition (on this point) that we are unable to determine whether it was excluded or permitted to go. However, we shall treat of it as if it were admitted.

Counsel's contention is that the language used in the latter part of the statement to Ramey, was not one of fact, but of conclusion only, and cites cases in which we have held that such statements as, "I have been shot for nothing," or "he shot me for nothing," were objectionable because mere conclusions. Philpot v. Com., 205 Ky. 636, 266 S. W. 348.

We do not place the language here used in the same category as that used in the cases cited by appellant. The statement here, if it were admitted, was a statement of fact, and not a conclusion. It may be construed to mean that deceased "was shot for nothing." It may also be construed to mean that appellant shot him while deceased was begging, and was doing nothing more, or that he was doing nothing more than begging him. This statement was competent to go to the jury, under the expressed belief of impending death, as above set out. Authority for our conclusion may be found in Hunter v. Com., 221 Ky. 170, 298 S. W. 379, cited in Engle v. Com., 258 Ky. 118, 79 S. W. (2d) 417, in which we held [page 381], that the statement, "[I] was not doing anything," not to be a conclusion, but a pure statement of fact.

The statement attributed to deceased, as detailed, being competent, there is no necessity for discussing the alleged error occasioned by the remarks of the commonwealth's attorney in the closing argument, since it is only contended that his reference to the alleged dying declaration as proof was prejudicial.

On the whole case we have reached the conclusion that appellant was accorded a fair and impartial trial.

The judgment is therefore affirmed.