## Ison v. Commonwealth.

March 14, 1947.

Rehearing denied April 25, 1947.

Roscoe C. Littleton, Judge.

H. R. Wilhoit and Walter M. Gardner for appellant.

Eldon S. Dummit, Attorney General, and Richard L. Drye, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellant, Reuben Ison, was tried for the willful murder of his brother, Merida Ison, and was convicted of voluntary manslaughter and sentenced to the penitentiary for two years. He only assigns one ground for reversal of the judgment, that the verdict is flagrantly against the evidence, which he insists conclusively establishes that he acted in self-defense and that the court should have directed a verdict in his behalf.

On the morning of December 23, 1945, Merida, accompanied by two nephews, Dock Jim and Lonnie Ison,

came to Reuben's barn where he was at work. Merida and Lonnie each had a shotgun and the former had some whiskey. After some insistence, Reuben took a drink and accompanied his three visitors down Dock's Creek, their destination being the home of Antney Ison. When they reached the home of Rufus Ison enroute to Antney's place, the appellant Reuben stopped for a visit with Rufus, who was his brother, and Merida left his gun in Rufus' barn. Everything was harmonious among these parties up to this point. The bill of exceptions is in narrative form but it appears that Merida proceeded to Antney's farm where he met up with Cecil and Claudus Lewis, who were hauling some corn and fodder on a sled.

Reuben testified that when he left Rufus' house and started home through a bottom a covey of quail flew up. He watched where the birds lit and then went home for his gun, intending to return and hunt them. Coming down the road from his home with his single barrel shotgun, Reuben met the Lewises with their sled and with them was Merida, who in the meantime had sent his son Ruby to the barn of Rufus to bring his gun, which was a pump gun. Merida and Claudus were shooting at targets and as Reuben came over the hill he shot his gun a couple of times because, as he testified, he heard the other gun firing.

It was testified by the Lewises that both Reuben and Merida were drinking. They further testified that one of Reuben's shots caused some gravel to fly up near their team which frightened it, and Cecil Lewis told Reuben to stop shooting. At that, Reuben pointed his gun at him and said, "Stop, and when I say stop, I mean stop." Reuben denied pointing his gun at Cecil or using the quoted words. Reuben then went past the Lewises and met Merida, who was just a few steps behind them, and they heard Reuben say something about a mail route but did not understand what it was.

As Cecil and Claudus Lewis went up the road with their team they looked back and saw Reuben and Merida walking up the road side-by-side with Merida shooting a time or two over Reuben's head. Reuben called to the Lewises to wait, but they called back that they didn't have time, whipped up their horses and went ahead.

After they were out of sight, the Lewises heard some other shots.

Ruby Ison, a son of deceased, testified substantially to the same facts detailed by Cecil and Claudus Lewis, except he stated that he heard appellant say to his father, "There is the man who knocked me out of my mail route," at which his father fired two or three shots over appellant's head, and the boy immediately left and saw no more.

Reuben's testimony is that when he met up with Merida on the road, the latter pointed his gun at him and asked where he was going. He answered, "down the road." Merida cursed him and told him he was not going down the road but back up the road. He replied, "You might take my mail route, but you can't make me get off the road." Thereupon, Merida fired three shots over his head and he (Reuben) turned about and started walking rapidly towards his home some 75 or 100 yards away. Merida followed him and fired some more shots over his head, which passed so close that the concussion deafened and shocked him; that when Merida would catch up with him while they were going up the road, he would ram the barrel of the gun against appellant, curse him and tell him to "go on." When the two reached appellant's home and appellant started up the steps leading to his yard, Merida said, "God damn you, I am going to do what I came to do. Turn around, I don't want to give it to you in the back." Believing that Merida was going to kill him, Reuben whirled around and seeing Merida with his gun to his shoulder and pointed at him, Reuben fired his shotgun from his hip and killed Merida, who was about 15 feet from him.

D. B. Ison, a merchant whose store was nearby, testified that Reuben came to his place and told him that Merida had been killed. The witness went immediately to the scene and started to examine Merida, when appellant pointed his gun at witness and said, "Stop, and I mean stop." When Merida's son started towards his father's body, Reuben told him to go back, and the boy left crying. Appellant denied pointing his gun at Mr. Ison or that he told Ison to stop or that he would not let Ruby go to his father's body. It was further testified by Mr. Ison that he found Merida's

gun in his hands and that he removed some live shells from its magazine.

Rissie Keaton, her husband, Ott, and Jewell Ison, appellant's wife, were all working at appellant's home and they corroborate him as to how the killing occurred, except they did not hear what Merida said as he raised his gun and pointed it at appellant when the latter started up the steps. But they saw Merida's lips moving. Rissie testified that when Reuben came to the house and got his gun that morning he said to his wife, "If you never see me alive again, that hay stack over at Henderson Skaggs' is paid for." Mrs. Ison testified that her husband was in the habit of saying such things to her on occasions when he left home. It was shown that Merida lived beyond appellant and often traveled this road in going to and coming from home.

Several witnesses testified as to deceased's reputation being that of a violent and dangerous man. One of these witnesses is the present sheriff and another a former sheriff of Morgan County. Lonzie Ferguson and Sanford Keaton testified as to seeing Merida about a week before the killing, when he said to them that some three years previously appellant had blacked his eye and that nobody could do that to him and get by with it.

In support of his argument that there was no evidence which contradicted his proof that he shot in self-defense, therefore he was entitled to a directed verdict, appellant cites such cases as Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. 2d 49; Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d 240; Dixon v. Commonwealth, 290 Ky. 469, 161 S. W. 2d 913; Mason v. Commonwealth, 291 Ky. 538, 165 S. W. 2d 24. These authorities are to the effect that if there is no evidence to disprove the interposed defense of the accused, it becomes the duty of the trial judge to direct his acquittal. It is insisted that as the two Lewises and deceased's son testified that deceased fired shots over appellant's head while he and deceased were on the road, and as the three eye-witnesses testified that deceased had his gun drawn on appellant at the time the fatal shot was fired, all the evidence supports appellant's testimony that he fired in self-defense.

But appellant overlooks the fact that the uncontradicted testimony is that both actors in this tragedy were drinking and that in all the shots fired over appellant's head, not one did him any physical injury, nor did he attempt to defend himself then. The fact that Reuben came down the road firing his gun and in answer to an admonition from Cecil Lewis to desist, he pointed it at Cecil and used harsh, if not threatening, language rather weakens his testimony that he went after his gun to hunt quail. Reuben's conduct after the killing was most unusual when he pointed his gun at D. B. Ison, saying, "Stop, and I mean stop," when the latter came to the scene of the tragedy at Reuben's request, and when so threatened was merely undertaking to examine deceased's body. Appellant's actions before and immediately after the homicide indicate that he was under the influence of liquor and that he was handling his gun in a reckless manner, to say the least.

When the accused admits the homicide it is incumbent upon him to satisfy the jury that he acted in self-defense. Great latitude must be allowed the jury in determining that question, and unless the evidence convincingly establishes that the killing was in self-defense, it cannot be said as a matter of law that the homicide was excusable. Bigby v. Commonwealth, 273 Ky. 335, 116 S. W. 2d 659; Newsome v. Commonwealth, 287 Ky. 447, 153 S. W. 2d 949. While this is a close case, we think appellant's conduct as above outlined tips the scales against him and that the court properly submitted it to the jury. We are further of the opinion that the verdict is supported by the evidence.

The judgment is affirmed.