## Walden v. Adams.

(Decided Jan. 15, 1937.)

J. J. FELTON, WILLIAMS & DENNEY, A. T. W. MANNING, H. J. McCLURE and J. E. WALDEN for appellant.

R. P. MOLONEY, JOEL M. JONES and TOM G. MOONEY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On September 15, 1934, the same day on which the appellant met with the accident hereinafter discussed, she filed suit against appellee in the Rockcastle circuit court. In her petition she alleged such careless and negligent operation of his car by appellee that thereby it collided with the one in which she was riding at the time, causing her to be severely injured. From a judgment rendered upon a verdict finding for appellee she appeals, urging only in argument that the jury's verdict was palpably and flagrantly contrary to the evidence.

It was charged in the petition that while she and her husband were traveling north from London to Lexington, at a point near Roundstone about six miles north of Mt. Vernon, and while the car in which she was riding was traveling on the north and the right side of the road, the Adams' car approached at an excessive rate of speed on the wrong side of the road and struck the Walden car.

Appellee answered by first denying negligence on

his part and further by a plea of contributory negligence. A reply completed the issue and upon proof and instructions to the jury about which no complaint is made here, the jury found for appellee as above indicated.

Appellant and her husband left their home in London about 12:30 a. m. on the above-mentioned date in a Ford coupe, going northwardly toward Lexington. It was a very rainy day and the concrete road was described by all witnesses as being wet and slippery. Mr. and Mrs. Walden had passed through Mt. Vernon and reached a point near Roundstone in the same county. It was then about 3:30 or 4 p. m. Mrs. Walden says that just as they were rounding a curve in the road to a straight stretch she saw the Adams car coming from the opposite direction at a terrific rate of speed. She described it as slipping from one side of the road to the other. She says her husband slowed down to about ten miles an hour and that appellee "looked as if he was putting on his brakes and attempting to slow down; then it was slipping from one side of the road to the other. It came toward us slipping like that and he seemed to straighten it up and I thought he would be able to miss us, and he must have put on his brake and lunged into the side of us." Appellant then describes the injury to the car and the broken glass on their right side of the center line of the road. She also describes her injuries, which from the proof were of a painful nature.

Appellee, who lived in Athens, Ga., was on his way home, driving southwardly. He was driving a Ford coupe. His wife and niece were in the car with him. He says that on the straight stretch he was driving from 55 to 65 miles an hour; that he noted a "Winding Road" sign and took his foot off the accelerator, letting the car move on its own power. Just as he was about to enter the curve he noted the Walden car coming toward him on the inside of the curve. He says the impact came about 2 feet to the right of the center of the road; that is, on his right side of the road. One of his tires was blown, the wheel broken down, and dragged on the pavement leaving marks. The impact turned the Walden car around, and it stopped against a post on the left side of the road off the pavement, with its front headed toward the south. The Adams car remained in the road, its front turned to the left, and as described, the front

wheels were about 2½ feet to the left of the center of the road. These were the only eyewitnesses who testified as to the collision, save one who was standing nearby and saw it.

Several witnesses arrived upon the scene very shortly after the collision, some of them before the Adams' car was moved out of the roadway so as to permit other cars to proceed. Three or more of these witnesses describe the positions of the two cars, the marks in the road, broken glass (admittedly from the Walden car), which indicated that the impact came on Walden's side of the road. Two witnesses for the appellee who were on the scene soon after the accident, testify with the same degree of certainty as to marks, glass and debris, and say that they were on Adams' side of the road.

One witness whose testimony was not challenged, was standing in a yard a short distance away, says the Walden car was coming around the curve "pretty fast, on the left, or wrong side of the road. Adams' car wasn't going quite as fast as the other fellow," and was on his right side of the road. He says the impact knocked the Walden car over against a gatepost, and the Adams car remained in the road, as above described, except this witness places it about two feet on the right of the center line, on which point he does not agree with Adams.

We have briefly given the facts as testified to by the witnesses, perhaps with less detail, but sufficiently to show that there was presented to the jury almost irreconcilable statements as to just how the accident did take place.

We are called upon by appellant to now say that the verdict of the jury is palpably and flagrantly contrary to the evidence, and is not supported by any competent testimony. As to the matter of competency or incompetency of testimony, we have carefully read appellant's brief, and there is no evidence pointed out as having been erroneously admitted or rejected, and a survey of the entire testimony indicates to us that the court was careful in his rulings. All rulings on the admission or rejection of evidence were fair and as far as we can observe, correct.

We have here a case where the evidence is extremely conflicting. However, it must be admitted that there was evidence which would support the jury's verdict. Conflicts in evidence must be resolved by the jury; the jury is to judge the weight of the testimony, the credibility of the witnesses, and we are authorized to set aside the verdict of a jury only where it appears that the verdict is flagrantly against the evidence. Mann's Ex'r v. Leyman Motor Company, 234 Ky. 639, 28 S. W. (2d) 956; Peak v. Arnett, 233 Ky. 756, 26 S. W. (2d) 1035; High Splint Coal Co. v. Payne, 243 Ky. 677, 49 S. W. (2d) 539; Warfield Gas Company v. Wright, 246 Ky. 208, 54 S. W. (2d) 666. In Adams v. Sexton, 265 Ky. 722, 97 S. W. (2d) 602, 604, we said: "It is not for this court to reverse a judgment because the evidence was conflicting, or that we would or might have made a different finding, or that in our opinion the verdict may appear to be against the weight of the evidence. Nothing short of a conclusion that the verdict is flagrantly against the evidence will give this court authority to disturb it on the ground insisted."

Judgment affirmed.