### Allen et al. v. Commonwealth.
May 2, 1939.

SHUMATE & SHUMATE for appellants.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Robert Allen and Johnny Mays have been convict-

ed of the murder of Charles Blount and their punishment fixed at life imprisonment. They are appealing. Blount was shot in Lee county and immediately removed to a hospital at Richmond in Madison county where he died within a day or so and appellants were indicted and tried in the latter county.

The first ground argued for reversal is that the verdict is flagrantly against the evidence and cannot be accounted for except for passion and prejudice upon the part of the jury. That contention of course calls for a review of the evidence but, owing to the large number of witnesses testifying and the size of the transcript, we shall not attempt to go into detail since a summary of the substance of the evidence will be sufficient.

The shooting occurred on show grounds near Beattyville where a circus was being held. It is claimed by appellant Allen, a deputy sheriff, that shortly prior to the shooting Blount had committed misdemeanors in his presence; that he approached Blount with a purpose to arrest him and so informed him and thereupon Blount fired upon him, the bullet taking effect in his body; that he then drew his pistol and returned the fire.

The evidence for the commonwealth is to the effect that Blount was standing by a platform in front of a side show talking to friends and acquaintances when Allen came up with a pistol in his hand and without uttering a word shot Blount, who fell to the ground; that Allen continued firing until he had emptied his pistol; that after he had fallen to the ground Blount fired a number of shots at Allen. At the time this shooting was going on, appellant Mays, also a deputy sheriff, and Barlow Durbin, who had been with Blount on the show grounds, were engaged in a pistol duel, the evidence for the commonwealth being to the effect that Mays fired the first shot. There is also evidence that he turned and fired at Blount after the latter was on the ground. It appears that others fired shots, 20 to 35 shots being fired within about 20 seconds, and others were shot during the affray. Ten or twelve witnesses for the commonwealth stated positively that Allen fired the first shot and at a time when Blount was making no demonstration toward him and not in any manner misbehaving. Some of these witnesses were positive in the statement that Mays fired at least one

shot at Blount. A number of witnesses for the commonwealth are men of prominence and standing in Beattyville and that community. Allen testified that when he went to the show grounds a man connected with the show made complaint to him of some disorder or trouble going on in the tent of the side show; that he, Mays, Elmer Treadway, Kin Murphy and Lynn McGurie, who were also deputy sheriffs, went into the tent where they saw Blount and Durbin passing their bottles back and forth taking drinks; that he and Mays went outside looking for the sheriff and town marshal but did not see either of them; that while he was outside and near the entrance to the side show he heard Blount say to Durbin, "Barlow, I want you and me to kill those two little sawed off sons of bitches of deputies", and that Durbin said, "What two?" That Blount replied, "Mays and Allen"; and that Durbin said, "All right". That a little later he and Mays again went into the side show and he saw Blount reach his hand down into his front or hip pocket and get out his pistol, saying something to Durbin as he handed one of the pistols to him; that Durbin made some reply, reached out, took the pistol and put it in his front pocket; that following this Blount and Durbin walked out of the tent and later Allen and the other deputies also went out; that he thought from what had been said that Blount or Durbin might shoot; that he walked up close to Blount and said, "Charlie I have got to arrest you fellows", and then Blount pulled his pistol out of his hip pocket and said, "You God damn son of a bitch"; that he jumped aside as far as he could to get out of the way and while he was so doing Blount shot him; that he got his pistol and turned; that Blount shot him again and he then returned the fire. When asked what he was arresting Blount for he stated that it was because he pulled his pistol. When asked why he did not arrest Blount and Durbin in the tent of the side show he stated in effect that he wanted them on the outside because people were all around. But so far as the record shows there were more people on the grounds when the shooting occurred than were in the tent of the side show. Allen was the only witness for either the commonwealth or appellants who testified that he said anything to Blount about making an arrest and according to his evidence he did not tell Blount what he was arresting him for.

There is a conflict in evidence as to whether Blount

and Durbin or either of them were or appeared to be under the influence of liquor. There is likewise a conflict of evidence concerning misbehavior on their part. Mays corroborated Allen in most of the details as to what occurred in the side show. Allen's own evidence to some extent discredits his claim that his purpose in approaching Blount was to arrest him, since if Blount and Durbin had committed any offense in his presence in the side show there was no reason why he could not have made the arrest there because he had 4 other deputies with him and it was certainly unnecessary for him to go outside for the high sheriff and town marshal.

Summing up, we have this situation, a number of witnesses for the commonwealth testified that neither Allen nor Mays attempted to arrest Blount but that without apparent cause Allen fired on Blount; that Mays fired upon Durbin and also fired some shots at Blount. In addition to what we have already recited concerning the evidence of Allen and Mays, a number of witnesses testified that Blount and Durbin started the shooting. It will therefore be seen that the guilt or innocence of appellants depended upon the credibility to be given their witnesses and the weight accorded their evidence and that according to fixed and unvarying rules was a matter solely within the province and discretion of the jury. Walden v. Adams, 267 Ky. 8, 100 S. W. (2d) 827; Edwards v. Druien, 235 Ky. 835, 32 S. W. (2d) 411. Our recitation of the evidence demonstrates beyond doubt the want of merit in the contention that the verdict is flagrantly or at all against the weight of the evidence. It is true that a number of witnesses stated that Blount was a dangerous and violent man, especially toward his enemies and those who had incurred his dislike, but that alone did not afford justification for shooting him and could only be considered in connection with other evidence bearing on the question as to who was the aggressor, apparent necessity, etc. In passing we might add that the reputation of appellants in that and other respects as shown by evidence is not enviable.

Criticism is made of the first part of instruction No. 1 because it apparently authorized the jury to find both Allen and Mays guilty if the jury believed either of them guilty. That part of the instruction is technically erroneous, but, when considered as a whole and in connection with all other instructions given, it is ap-

parent that a jury could not have been misled by it, since, when so read and considered, it was clearly manifest that the jury was not authorized to find both of the defendants guilty unless they believed from the evidence that both shot and fatally wounded deceased or that one so shot and wounded him and the other was aiding and abetting therein.

The principal objection to the instructions is directed at instruction No. 3, which relates to the right of the deputy sheriffs to make an arrest for any offense committed in their presence. It is said in effect in this instruction that appellants as deputy sheriffs had the right to arrest persons who were drunk or intoxicated in a public place or pointing or flourishing deadly weapons at or in the presence of persons or otherwise engaged in disorderly conduct by cursing or acting in a threatening manner, in their presence. It is vigorously argued that this instruction should have embraced the right to arrest a person for carrying a concealed or deadly weapon or taking such weapon out of or placing it in concealment in the presence of the officers. We have searched the record with great care to find any evidence that either Blount or Durbin had a pistol in concealment and have recited what Allen said about it. Neither he nor any other witness testified that either Blount or Durbin took a pistol out of or placed one in concealment. If such was the fact certainly Allen or some other witness would have so stated. In the absence of evidence to establish the offense of carrying a concealed, deadly weapon, contention that the instruction was erroneous in the particular indicated is wanting in merit.

It is stated in brief for appellants that instructions 2 and 3 are simple and in good form except for the part relating to aiding and abetting and it is contended that there is no evidence on which to base that part of the instruction. The evidence shows that Blount and Durbin were only a few feet apart; that Allen and Mays approached them and practically simultaneously opened fire; that Mays not only shot at Durbin but after Blount was prostrate on the ground also fired at him. These and other proven facts and circumstances indicating concert of action warranted an instruction on aiding and abetting.

It is further argued that employed counsel in arguing the case for the commonwealth stated that evi-

dence of Mays having killed other people was substantive testimony because the court by admonition had limited the effect of that testimony. We note that the bill of exceptions merely refers to affidavits regarding that matter. We find in the record the affidavits stating that such statements were made during the course of the argument by counsel referred to, but, there are counter-affidavits by him and by others present that no such statement was made. This was made one of the grounds for new trial and the judge who heard the argument of counsel and considered the affidavits and counter-affidavits respecting that ground overruled the motion and properly so as we conclude; and in the state of the record this ground for reversal cannot be sustained.

Another ground argued for reversal is that the lower court erred in not sustaining appellant's motion for a new trial on the ground of newly discovered evidence. The alleged newly discovered evidence is that after the close of the case someone handling a coat worn by deceased at the time of the shooting and which had been introduced in evidence found some tickets to the show in a pocket. It is urged that this evidence is important as showing that deceased had, as intimated by some witnesses, coerced showmen to give him the tickets. Allen testified that the showmen made complaint to him about misconduct of the deceased and his associate and it is contended that this evidence conduced to establish that fact; however, and as will be seen, this was merely cumulative and cumulative evidence does not authorize the granting of a new trial unless it is of such a nature and character as would likely affect or change the verdict of the jury. There is also a further rule that a new trial will not be granted on the ground of newly discovered evidence unless it is manifested that it could not have been discovered by ordinary diligence and no such showing is made here. The coat was introduced in evidence and there is no reason why the tickets might not have been discovered as easily before the trial as afterwards. Furthermore it is quite apparent that this evidence could have had no weight in determining the verdict of the jury.

It is finally argued that there is no evidence of probative value that Mays shot or shot at Blount nor any evidence that he was acting in concert in shooting Blount. That too comes down to a question of the credi-

bility of the witnesses, since some of them stated positively that he did shoot at Blount and what we have already said concerning evidence to show he acted in concert with Allen disposes of that contention.

Some question was made about two jurors making notes during the progress of the trial but it is admitted in brief that any contention of error in that respect is not well founded.

Finding no error in the record prejudicial to appellants' substantial rights, the judgment is affirmed.