# Birdsong v. Commonwealth.

Feb. 13, 1942.

Joe Lancaster and Roy G. Garrison for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

J. B. Birdsong and his brother, C. D. Birdsong, were

jointly indicted for the murder of Ollie Dunningan. Upon a separate trial, J. B. Birdsong was convicted and his punishment was fixed at life imprisonment. He asks that the judgment be reversed because: (1) a directed verdict should have been given in his behalf; (2) the verdict is flagrantly against the evidence; (3) incompetent evidence was admitted against him; (4) the court did not give the whole law of the case.

Dunningan, a toll-bridge collector, at the Eggner's Ferry Bridge, was shot to death in the toll-house of the bridge between 8:15 and 8:30 o'clock on the night of Oct. 28, 1940. His body, still warm, was discovered by C. M. Graham and T. C. Arnett, two gentlemen traveling in a car across the bridge, who notified the officers of the killing. The sheriff testified deceased's head was lying next to the front door with his feet near the cash register with five bullet wounds in his body. There were no eyewitnesses to the crime and the evidence against defendant is circumstantial.

Five fired 45 calibre pistol shells were picked up at the scene of the crime, three of which were found outside and two inside of the toll-house. On Nov. 12th, some two weeks after the crime, Major Joe Burman, Supervisor of the Criminal Bureau of Investigation of Kentucky, found an additional empty 45 cablibre shell on the back porch of defendant's home. This, together with the shells found at the scene of the crime, Major Burman sent to the Federal Bureau of Investigation at Washington.

Capt. T. F. Baughman, who has been with FBI twenty-two years in its laboratory department, qualified as a ballistic expert. He testified that the five shells found at the scene of the crime were of the type known as 45 automatic pistol shells and that four of them showed they had been fired from the same weapon. But he was unable to determine whether or not the fifth shell found at the scene of the crime had been fired from the same gun which fired the other four. He stated on the witness stand that no two weapons make the same mark on a shell that is fired and ejected. He testified the shell found at the defendant's home showed it was fired by the same pistol which fired four of the shells found at the scene of the crime.

No weapon was introduced in evidence from which

these 45 shells were fired. The record shows that C. L. Troupe, who was discharged from the United States Army in 1919, was allowed to retain a 45 automatic nickel-plated Colt pistol. He later sold it to Frank Rickman, who in turn testified he sold it to one, Helmantoler. While Helmantoler was not introduced as a witness, Mary Jane Lewis, a prostitute of Paducah, testified she bought a 45 calibre nickel-plated Colt automatic from Helmantoler in December, 1919, and sold it to defendant about a month later for $18.

Defendant admitted paying her $18 for an automatic pistol, but swears it was a 38 calibre and not a 45. He denied he ever owned a 45. The Lewis woman when shown the 38 on the witness stand said that was not the pistol she sold defendant; that the weapon she sold him was much larger and had a hammer on it.

John Lowry testified he saw defendant with a nickel-plated automatic which looked like a 45 and defendant told him it was a 45. Defendant denied ever showing Lowry a pistol.

When arrested on the charge of murdering Dunnigan he denied he owned a gun. On his trial he said he made such denial because he feared the officers would confiscate his pistol. Although his testimony was to the effect he bought the pistol to keep around his home, he had it hidden 300 or 400 yards from his dwelling so his mother, as he said, would not know he had it.

On the night of the killing, two girls, Marchmont Higgins and Cornelia Higgins, with two men, Kelly (also referred to in the record as Kirby) Mitcherson and Needmore Higgins, were parked on a side road from quarter to half a mile from the bridge in a one-seated car. Mitcherson testified the girls were intoxicated, but that he had taken only a couple of drinks from a pint bottle. The testimony of the girls was that they were drinking but were not drunk and that the four persons in the party had consumed but a half pint of liquor.

Some five or ten minutes after hearing the shots Mitcherson drove the car with the three other persons in it on the highway, but he saw no one on the pavement. Both girls testified they saw a man walking fast along the highway, and while they were unacquainted with defendant they identified him at the trial as the man they

saw on the highway. However, they were not certain about it being him but gave as their best judgment that it was.

Mitcherson was asked on cross-examination if he did not remark to the girls concerning the man walking on the highway, "That is J. B. Birdsong, I guess he has been up to finish off Ollie (Dunnigan)." He denied making the statement. Both girls testifying in rebuttal over the objection of the defendant, said that he made such remark. The court admonished the jury this testimony might be considered only for the purpose of contradicting Mitcherson and not as substantive evidence against defendant. It is earnestly insisted that this testimony was incompetent as violating the hearsay rule.

A similar question was presented in the case of Harris v. Com., 226 Ky. 584, 11 S. W. (2d) 410, where a daughter of appellant was asked upon cross-examination if she had not made certain statements to Mrs. Strater as to why her daddy had killed deceased. Upon her denying making them, the Commonwealth was permitted to contradict her by Mrs. Strater. It was written such contradictory evidence was admissible, but that the court should have admonished the jury as to its purpose and effect. In the instant case the court gave such an admonition and there was no error in permitting these two girls to contradict Mitcherson. This is not the same question which was involved in Miller v. Com., 241 Ky. 818, 45 S. W. (2d) 461, where it was held to be a violation of the hearsay rule to ask a witness on cross-examination if she had not repeated to a third person certain threats as having been made by defendant, and upon her denial, to permit the third person to testify as to what statements were made by the witness.

Complaint is further made that when Marchmont Higgins was on the stand, she was asked who it was she saw on the highway and she replied, "Kirby and Needmore said it was J. B. Birdsong." On defendant's objection the ruling of the court was, "Who did you see? Describe the man you saw." This was equivalent to sustaining the objection, and as defendant's counsel did not request the court to admonish the jury not to consider the witness' answer, he cannot now be heard to contend it was prejudicial to his client.

The defense was an alibi. Defendant testified he

was a friend of deceased, and the Commonwealth made no effort to prove any motive for the slaying. The evidence adduced by defendant and his witnesses shows he and two companions on the night of the killing visited the home of his sweetheart where they remained until about 7:30. Upon leaving her home they went to a restaurant in Golden Pond, bought some soft drinks and cigarettes and left a little after 7:30; the two friends driving him to his mother's home. By his mother and stepfather, defendant proved he arrived home about 8 o'clock, ate supper, retired to his room above theirs around 8:30, and never left the house during the night. They heard him coughing for about an hour or so after he retired and his room had a loose plank floor which rattled with every step taken thereon, and he could not have walked on it without arousing them.

The 45 calibre empty shell Major Burman found on the back porch of defendant's home was explained by the stepfather testifying that a couple of years ago he was employed at Fort Knox and he brought back a handful of such to his home. Evidently, this explanation was not accepted by the jury which no doubt gave serious consideration to the testimony of the ballistic expert, Baughman, that this particular shell was fired from the same weapon which fired four of the shells found at the scene of the crime.

Able counsel for defendant rely upon Privitt v. Com., 281 Ky. 665, 113 S. W. (2d) 49 and Begley v. Com., 250 Ky. 779, 63 S. W. (2d) 951, wherein many authorities are cited in support of the rule that if the evidence of the Commonwealth fails to incriminate the accused, or is not sufficient to prove his guilt, it is the duty of the trial court to direct his acquittal. This is the correct rule, but the facts do not bring the instant case under it. A conviction may be had upon circumstantial evidence alone where it may not be reconciled with the presumption of innocence and excludes every reasonable hypothesis of defendant's innocence. Bates v. Com., 284 Ky. 1, 143 S. W. (2d) 730, and authorities therein cited.

The evidence of the Commonwealth, if believed by the jury, is irreconcilable with defendant's innocence. That introduced by the defendant is amply sufficient to establish his innocence. The jury is the sole judge of the facts on conflicting evidence, and this court has steadfastly refused to disturb a verdict where there is sub-

stantial proof to support it. Barton v. Com., 257 Ky. 23, 77 S. W. (2d) 397; Allen v. Com., 278 Ky. 396, 128 S. W. (2d) 719; Sizemore v. Com., 279 Ky. 190, 130 S. W. (2d) 31. It follows that the court did not err in refusing to direct defendant's acquittal; also, in refusing to hold that the verdict was flagrantly against the evidence.

It is urged that the court did not instruct on the whole law of the case since the instructions only covered murder and reasonable doubt and not manslaughter and self-defense. In the recent case of Davenport v. Com., 285 Ky. 628, 148 S. W. (2d) 1054, 1060, this question was discussed and many authorities collated. It was there written:

> "No case is cited to us and we have found none wherein this court has approved instructions covering all the degrees of homicide where defendant testified and the facts showed he was guilty of the crime of murder or else he had not committed the crime.'"

In the case at bar defendant testified and the evidence shows that he was guilty of murder or nothing; therefore, the court correctly confined the instructions to murder and reasonable doubt.

We cannot seriously regard defendant's argument that the court should have defined "reasonable doubt." Section 238 of the Criminal Code of Practice reads:

> "If there be a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal."

It has many times been written that if the reasonable doubt instruction is given substantially in the language of the Code it is sufficient. Gatliff v. Com., 107 S. W. 739, 32 Ky. Law Rep. 1063; Minniard v. Com., 158 Ky. 210, 164 S. W. 804; Wolff v. Com., 211 Ky. 62, 276 S. W. 1067; Shrout v. Com., 226 Ky. 660, 11 S. W. (2d) 726. Here the instruction was substantially in the language of the Code, therefore it is free from criticism.

The record contains no error prejudicial to defendant's substantial rights, therefore the judgment is affirmed.